## GILPATRICK v. PERRY.

(No. 948; Decided April 2, 1920; 188 Pac. 442.)

BILL OF EXCEPTIONS—PRESENTATION AFTER JUDGE OUT OF OFFICE—
TIME FOR PRESENTATION—EVIDENCE—JUDICIAL NOTICE OF COURT
TERMS—ORDER—EXTENSION OF TIME FOR FILING BILL OF EXCEP-
TIONS—REQUEST FOR EXTENSION OF TIME—APPEAL AND ERROR—
EXTENSION OF 60 DAY PERIOD FOR FILING BILL OF EXCEPTIONS—
TRUSTS—GUARDIAN AND WARD—WITNESSES—CROSS-EXAMINATION.

1. A bill of exceptions as to matters occurring on trial, includ-
   ing the findings and exceptions thereto, is properly pre-
   sented to the judge who presided at trial, notwithstanding
   his term of office had expired.
2. Where defendant's motion for new trial was overruled on
   March 22nd, by the judge to whom same had been re-
   ferred, the bill of exceptions as to matters occurring at
   trial, which was presented to the judge who had presided
   but had gone out of office, was within time, where it was
   presented May 20th, being within 60 days.
3. The Supreme Court will take judicial notice of the terms
   of court in the several districts.
4. As Comp. Stat. 1910, 4595, as amended by Laws 1917, c. 70,
   1, has not limited the time for settling or filing of bill but
   only the time for reducing exceptions to writing and
   presenting the same for allowance, an order of the court
   overruling motion for a new trial and granting the de-
   feated party time until the next term of court to prepare,
   settle and file bill of exceptions, must be deemed as grant-
   ing time to prepare and present a bill.
5. An order, entered on the overruling of motion for new
   trial, which extended the time for filing bills of exceptions
   until the next term of court being within the power of the
   court under Comp. Laws 1910, 4595, as amended by Laws
   1917, c. 70, 1, because the next term of court began within
   80 days, is valid, although it did not expressly declare that
   the 60 day period allowed by statute was extended.
6. Comp. Laws 1910, 4595, as amended by Laws 1917, c. 70, 1,
   fixing the time for presenting bill of exceptions, and
   allowing the trial court to extend the same, does not re-
   quire that the request for an extension shall be in writing
   or filed, although the judge may perhaps have the right
   to insist, as a condition to acting upon such request, that
   it be presented in the form of a written motion or applica-
   tion.

7. Where the time for presenting bills of exceptions as fixed by Comp. Laws 1910, 4595, as amended by Laws 1917, c. 70, 1, is extended, it will be presumed that the order of extension, made without written application, was made upon proper request and a satisfactory showing.

8. The time for presenting bills of exceptions may be extended at the time of the final order from which under Comp. Laws 1910, 4595, as amended by Laws 1917, c. 70, 1, the defeated party would have 60 days in which to present bills of exceptions.

9. In an action by the guardian of a minor to impress a trust on real estate from the alleged unauthorized use of the minor's funds by former guardian in paying off a mortgage on real estate which had been the homestead of the minor's father, evidence held to show that the former guardian, who was the minor's mother, used her ward's property in discharging the mortgage, and hence the same should be revived as a lien.

10. Where defendants by their detailed cross-examination, as to conversations which a witness had with a person since deceased who was one of defendant's predecessors in title, made the witness their own, defendants cannot complain of the admission of such testimony against them.

ERROR to the District Court, Sheridan County; HON. C. H. PARMELEE, Judge.

Action by George W. Perry, as guardian of Dott Case, a minor, against Samuel I. and Bertha K. Gilpatrick and others. There was a judgment for plaintiff and defendants first named bring error. There was a motion filed to strike the bill of exceptions which was heard in connection with the hearing on the merits.

*Camplin & O'Marr*, for plaintiffs in error.

The bill of exceptions was filed within the time allowed by court order; time for filing could be extended (Laws 1917, c. 70) ; the motion comes too late (4 Cor. Jur. 327; Yates v. Kinney, 23 Neb. 648). The filing of briefs was a waiver of a motion to strike (Thompson v. Missouri, 15 Neb. 329). On the merits the action was to recover funds of a ward alleged to have been used by her guardian in paying off a mortgage, and to subrogate the interests of the ward to those of the mortgagee that received payment; the evidence

is insufficient to sustain the judgment; rules of evidence relating to constructive trusts apply (3 Pom. Eq. Jur. 2028; Scadden v. Scadden, 53 Pac. 442, 39 Cyc. 26). A constructive trust cannot be established by a mere preponderance of the evidence (De Galindo v. De Galindo, 81 Pac. 279, 39 Cyc. 193; Barger v. Barger, 47 Pac. 702; Pom. Eq. Jur. 1040; Cushing v. Hueston, 102 Pac. 29); the rule applies to all implied trusts whether resulting or constructive (Pom. Eq. Jur. 1058; Guignon v. Bank, 55 Pac. 1051). The delay in asserting trust is unexplained, which is a circumstance against its establishment (39 Cyc. 637).

*C. A. Kutcher,* for defendant in error.

The bill of exceptions should be stricken from the files, not having been presented in time (4595 C. S., Laws 1917, c. 70); the order allowing time until the first day of the succeeding term was not in accordance with the act of 1917, fixing a 60 day period for presentation of the bill of exceptions; the 60 day period was exceeded in the present case.

As to the merits, the controversy is narrowed down to the question of the sufficiency of the evidence to sustain the decree; the record shows the decree of the court to be amply sustained by the evidence; the rule requiring clear and cogent evidence to establish a constructive trust does not aply to transactions between relatives, who, when a *prima facie* case is made against them, are required to show the good faith of the transaction (Schwartz v. Gerhardt, 75 Pac. 689). The funds of the ward were used to pay the Barr mortgage; the estate of the ward should be subrogated to the rights of the mortgagee.

*Camplin & O'Marr,* in reply.

An examination of the case of Schwartz v. Gerhardt, 75 Pac. 689, cited by defendant in error, has no application here, the controversy being between the guardian and persons between whom no confidential relationship exists; the Gilpatricks are purchasers of the property sought to be charged with the trust; the rule does not therefore apply.

POTTER, JUSTICE.

This case is here on error, and has been submitted upon a motion to strike the bill of exceptions and also upon the merits. The motion will first be considered. It is moved thereby, first, to strike the entire bill, and, second, to strike that part of the bill showing a motion for new trial filed December 30, 1916, and the order of March 22, 1918, overruling the same, on the ground that the bill was not presented for allowance within sixty days after the overruling of said motion for new trial, but was presented sixty-two days thereafter without an extension of time having been applied for or granted. The facts upon which the motion must be determined are as follows:

The cause was tried without a jury in the District Court in Sheridan county, one of the counties of the Fourth Judicial District, with Judge Parmelee, the regular Judge of said District, presiding, on December 21, 1916, and judgment for the plaintiff was rendered on that day. On December 30, 1916, a motion for new trial was filed by the defendants, the plaintiffs in error here, alleging errors occurring upon the trial and in the findings and judgment. Subsequently another motion for new trial was filed by said defendants on the ground of newly discovered evidence. After the filing of the first motion for new trial, Judge Parmelee was succeeded in the office of Judge of said District by Judge Burgess, who had represented one of the parties as counsel on the trial of the cause, and on March 14, 1918, neither of said motions having been disposed of, the cause was assigned and transferred to Judge Raymond of the Seventh District "for trial, hearing and determination". Thereafter, on March 22, 1918, the first motion for new trial was presented to said court, Judge Raymond presiding, and it was on that day overruled, the defendants excepting, and by the order overruling the motion time was granted the defendants until and including the first day of the next regular term of the court in which "to prepare, settle and file their bill of exceptions herein". On May 13, 1918, Judge Raymond presiding, the court's attention was

called to the second motion for new trial, and an order was entered overruling the same, to which said defendants excepted, and that order also granted to the defendants time until and including the first day of the next regular term of the court in which "to prepare, settle and file their bill of exceptions herein".

The bill, which includes the evidence and exceptions taken upon the trial, the findings and judgment and exceptions thereto, and also said motions for new trial, and shows the overruling of each motion with the exception thereto, was presented for allowance to Judge Parmelee on May 20, 1918, and the fact that such presentation was endorsed on the bill by Judge Parmelee over his signature as the "Judge presiding at the trial of said cause". On the same day the bill was allowed and signed by him, as such Judge, his certificate of allowance reciting that the bill was presented to him on said May 20, 1918, "within the time fixed by law"; that it "contains all the evidence offered by the parties to said action on the trial thereof and all the exceptions and objections of the parties to the rulings of the court during said trial and that all the matters and things therein set forth are true and correct". On May 23, 1918, the bill was presented for allowance to Judge Raymond, and on that day the same was signed and allowed by him, "in so far as it relates to said two motions for a new trial, the orders overruling the same, the exceptions of counsel thereto, and orders fixing date for preparing, settling and filing the bill of exceptions herein."

The statutory provisions applicable to this case upon the question of whether the bill was presented in time are found in section 4595, Compiled Statutes, 1910, as amended by section 1 of chapter 70 of the Laws of 1917. Before the section was amended, it provided that time may be given for reducing an exception to writing, but not beyond the first day of the next succeeding term. As amended, the section reads as follows:

"Section 4595. The party objecting to the decision must except at the time the decision is made, and shall have sixty

days from and after the date of the judgment, decree, or final order in the case within which to reduce the exception to writing and present the same to the court or judge for allowance. If within said sixty days the party excepting shall make it satisfactorily to appear to the court or judge authorized to allow the bill of exceptions that the party will be unavoidably prevented from presenting the bill within said time, the court or judge by written order may extend said time, but not to exceed sixty additional days."

As to the matters occurring upon the trial, including the findings and exceptions thereto, the bill was properly presented to Judge Parmelee, who presided at the trial, notwithstanding that his term of office had expired (Stirling v. Wagner, 4 Wyo. 5, 31 Pac. 1032). And having been presented to him on May 20, 1918, within the period of sixty days after the date of the order overruling the first motion for a new trial, which had been filed on December 30, 1916, and was based upon errors alleged to have occurred upon the trial and in the findings and judgment, the bill, as to the exceptions included therein taken upon the trial and to the findings and judgment, was presented strictly within the time granted by the statute in the absence of an order extending the time.

And we think the entire bill assailed by the motion to strike was presented in time, for the reason that it was presented to both Judge Raymond and Judge Parmelee within the time granted by the order of the court of March 22, 1918, made at the time of overruling said first motion for a new trial, which, in our opinion, is to be understood and construed as an order extending the time to and including the first day of the next term of said court. We know judicially that the first day of the next term, as prescribed by statute, was June 10, 1918, a period of 80 days from the date of said order, and only 20 days additional to the sixty days granted by the statute, and therefore within the power of the court or judge, by acting within the sixty days granted by the statute, to extend the time not to exceed sixty additional days.

It is declared by the motion to strike the bill, and contended in support of it, that no extension of time for presenting the bill was applied for or granted; and the order aforesaid granting time is referred to by counsel in support of the motion as an attempt of the court to follow the former practice under section 4595, as the result of overlooking the amendment, and therefore ineffective for any purpose. But it seems improbable that the Judge could have overlooked or been ignorant of the amendment of such a statute enacted more than a year before the date of the order, and we think it much more reasonable to assume that the court, knowing the law, intended by the order to extend the time, under the authority conferred by the statute. It is certainly an order purporting to grant time within which to prepare, settle and file a bill, and since the statute has not limited or provided for limiting the time for settling or filing a bill, but only the time for reducing exceptions to writing and presenting the same for allowance (See Lee v. Cook, 1 Wyo. 417; Hardin v. Card, 14 Wyo. 479, 85 Pac. 246; Hawley v. LeClair, 18 Wyo. 1, 102 Pac. 850), the order, in that respect, must be construed as granting time to prepare and present a bill (Jones v. Bowman, 10 Wyo. 47). And as such it was clearly within the authority given to the court and judge by the statute in force at the time. That being the case, the order is not rendered ineffective by the fact that it does not expressly declare that the time allowed by statute is thereby extended (Marks v. Boone, 24 Fla. 177; Howard v. Carter, 71 Kan. 85, 80 Pac. 61; Gerdom v. Durein, 74 Kan. 704, 87 Pac. 1137). In Marks v. Boone, the court said:

"The court by an order made in term, granted appellant 'sixty days' additional time' for settling the bill of exceptions. This is, we think, to be construed as meaning sixty days in addition to the time allowed by the practice in the absence of an order extending the time, or, in other words, sixty days after the adjournment of the term in which the order was made."

The statute does not seem to require that the request for an extension shall be in writing or filed. While the Court or Judge may, perhaps, have the right to insist, as a condition to acting upon such a request, that it be presented in the form of a written motion or application, an order made without it must be presumed to have been made upon proper request and a satisfactory showing. And a request for an extension of time and an order granting it may, we think, be made at the time of the final order, from the date of which the sixty days arbitrarily allowed by the statute will begin to run, as well as at any time subsequent thereto within the said sixty day period. (See Howard v. Carter, and Gerdom v. Durein, *supra*). For these reasons the motion to strike the bill will be denied.

The case upon the merits, as substantially stated in the briefs, is an action brought by the guardian of the estate of a minor child, to impress a trust upon certain real estate, resulting from the alleged unauthorized use of the funds of said minor by a former guardian in paying a certain mortgage upon said real estate and causing thereby its discharge upon the records, the specific relief asked being that said minor or the plaintiff, as her guardian, be subrogated to the rights of the mortgagee, and that the mortgage be revived as a lien upon the property with the same priority as before the payment and discharge thereof by the use of the ward's money.

Certain facts are either admitted by the pleadings or established by the evidence without controversy. Such facts are: The mortgage in question, dated October 31, 1906, was executed to J. Crouse Barr by Sterling P. Case and his wife, Hattie C. Case, covering certain lots in the City of Sheridan, then owned by said Sterling P. Case and upon which he resided with his wife and their minor child, Dott Case. It was given to secure the payment of a promissory note of the same date, executed by said Sterling P. and Hattie C. Case, for the sum of $1,000, due and payable one year after date with interest from date until paid at the rate of eight per cent. per annum. On September 14, 1907, said

Sterling P. Case died intestate, having remained until his death the owner of said mortgaged property, subject to the mortgage, and leaving surviving him as his only heirs at law his widow, the said Hattie C. Case, and his daughter, said Dott Case, then nine years of age.

On October 9, 1907, said Hattie C. Case, upon her application, was, by the proper court in Sheridan county, duly appointed the guardian of said Dott Case, and upon the issuance of letters of guardianship on Oct. 12, 1907, she qualified on that date as such guardian. On said 12th day of October also, she was duly appointed by the same court administratrix of the estate of said Sterling P. Case, deceased, and until her death, which occurred on or about Jan. 28, 1915, Mrs. Case remained the duly appointed, qualified and acting administratrix of said estate and guardian of said Dott Case. After the death of her said husband and her appointment as guardian as aforesaid, and on or about Oct. 31, 1907, Hattie C. Case collected and received upon a fraternal insurance policy or benefit certificate carried by the defendant the sum of $1,000 payable to her under said certificate or policy, and the further sum of $1,000 payable to her daughter and ward, Dott Case, receiving said sums in two New York drafts for $1,000 each. And on that date she deposited the money represented by said drafts in separate accounts in the banking house of the State Loan and Trust Company at Sheridan, as follows: $1,000 to her personal credit in an account opened in her own name, and $1,000 in a separate account to her credit as guardian opened in the name of "Hattie C. Case, Guardian of Dott Case".

In April, 1910, the said Hattie C. Case, as administratrix aforesaid, filed an inventory and appraisement of the estate of said Sterling P. Case, deceased, whereby it appeared that the entire estate consisted of two lots in the original town of Sheridan and a dwelling house and other improvements thereon, upon which the decedent and his family resided at the time of his death, the same property covered by the mortgage aforesaid, and that it was appraised at the sum of $5,000. It is alleged in the petition and not denied by the

answer of the defendants who are here as the only plaintiffs in error, that the said estate of said Sterling P. Case is indebted to the Bank of Commerce of Sheridan, evidenced by a mortgage dated June 16, 1913, given to said bank by said Hattie C. Case as administratrix, and in person, under an order made by said court in the course of the administration of said estate, and that said mortgage constitutes a first and paramount lien upon said real estate.

It is also alleged and not denied that after the death of said Hattie C. Case, and on the 13th day of February, 1915, by an order of said court in Sheridan county, one D. B. Bethurem was duly appointed guardian of the person and estate of said Dott Case, and was the duly appointed, qualified and acting guardian of the person and estate of the said minor at the time of the commencement of this suit. The said fact of his appointment was also shown by the introduction and admission in evidence of the petition for said appointment, the order therefor and the letters of guardianship issued thereon. It was alleged and admitted by the answer aforesaid that after the death of Hattie C. Case, one J. L. Stotts was appointed as administrator *de bonis non* of the estate of Sterling P. Case, deceased, and that Eff Sharp was duly appointed administrator of the estate of said Hattie C. Case, deceased, and that each of them duly qualified and was such administrator at the time of the commencement of this suit.

Thereafter, on April 3, 1915, this suit was brought by the said D. B. Bethurem, as guardian of the estate of said Dott Case, against said J. L. Stotts, administrator of the estate of Sterling P. Case, deceased, Eff Sharp, administrator of the estate of Hattie C. Case, deceased, and Samuel I. Gilpatrick and Hertha K. Gilpatrick as defendants; the petition alleging, with reference to the two last named defendants, that on or about November 19, 1914, the said Hattie C. Case pretended to make, sign, execute and deliver to said Samuel I. Gilpatrick and Hertha K. Gilpatrick, a deed for the said lots above mentioned and pretended to convey thereby all of said property with the improvements

thereon, and that said deed was of record in the office of the county clerk of said county. And it was prayed by the petition that the said deed be declared subordinate to the rights of the said plaintiff or said Dott Case.

After the suit was commenced, it having been made to appear that said D. B. Bethurem had died on or about December 12, 1915, and that George W. Perry had been duly appointed in his place as guardian of said Dott Case, an order was regularly entered substituting the said Perry in his capacity as guardian as plaintiff in the action. J. L. Stotts, as administrator aforesaid, filed an answer, but there was no answer or appearance by the administrator of the estate of Hattie C. Case, deceased. And on the trial the only parties represented in opposition to the plaintiff were the said Samuel I. Gilpatrick and Hertha K. Gilpatrick.

The petition alleges that Hattie C. Case, after her appointment as guardian as aforesaid, and without any order or authority from the court, used the sum of $1,000 of her ward's money in paying and causing the discharge of the mortgage aforesaid. To sustain the averment of the petition in that respect evidence was introduced to show the fact of the payment of the note secured by the mortgage on November 13, 1907, and the discharge of the mortgage of record on November 14, 1907, and further evidence for the purpose of showing, and tending to show, that the money used in so paying the note and mortgage was the sum of $1,000 aforesaid received by Mrs. Case on Oct. 31, 1907, in her capacity as guardian for her daughter, and deposited in the bank to her account as guardian. Upon the evidence so introduced, no evidence having been offered by defendants, the court found generally for the plaintiff and against the defendants, and, specifically, that on November 13, 1907, the said Hattie C. Case, then the guardian of the estate of said Dott Case, and having in her possession the sum of $1,000 belonging to her said ward, took and used the same, but without any authority from said court, to pay off the said mortgage and note, causing thereby the discharge of the mortgage of record. That at the time of the

payment and discharge of said note and mortgage, the same constituted a valid and subsisting indebtedness of the estate of Sterling P. Case, deceased, and a valid and subsisting lien upon said real property; that the said estate of Sterling P. Case was thereby enriched to the extent of said payment; and that a lien should be impressed upon the property for that amount with interest at the rate of eight per cent. per annum from November 13, 1907. That the said Dott Case should be subrogated to all of the rights of the said J. Crouse Barr to and under said note and mortgage, and that the mortgage should be revived in her name and for her benefit to the extent and in the amount of said sum with interest thereon as aforesaid. That she should have, and she was by the decree declared to have, all of the rights and privileges under said note and mortgage, had they not been paid and discharged. It was, however, found and so decreed that the lien impressed upon said property in favor of said minor shall be subordinate to the mortgage given by said Hattie C. Case to the Bank of Commerce. A judgment was entered accordingly, declaring also that the lien impressed upon said property and said mortgage as revived, shall be a first and prior lien upon the property, with the exception of the mortgage as aforesaid to the Bank of Commerce. Samuel I. and Hertha K. Gilpatrick excepted to the findings and judgment, and their motion for new trial alleging error on the trial and in the findings and judgment having been overruled and an exception having been reserved thereto, the case is brought here on error. Although several errors are assigned in the petition in error, the only assignment discussed in the brief of plaintiffs in error is that the findings and judgment are not sustained by sufficient evidence. And a discussion of that question is confined to the sufficiency of the evidence to show the use of the ward's money in the payment and discharge of said note and mortgage. No question is raised as to the power of the court to grant the specific relief which was granted by the decree or the propriety of granting such relief as against the plaintiffs in error, upon the facts found by the court.

The fact of the payment of the note and the release of the mortgage aforesaid on November 13 and 14, 1907, respectively, is not controverted, but it may be well to state that these facts were proved by the plaintiff's introduction of the original note in evidence across the face of which was written, "Paid in full this 13th day of November, 1907, and satisfied. F. H. Stotts & Co."; and by the introduction of the record of the mortgage showing its release on the margin thereof on November 14, 1907. And this was supplemented by testimony, not contradicted, that at the time of the endorsement of the fact of payment upon the face of the note F. H. Stotts, whose name was signed to said endorsement, was then the agent of J. Crouse Barr, the payee and mortgagee, and had since died.

The evidence to show that such payment was made by Hattie C. Case and by the use of her ward's money consists of the following: Duplicate deposit slips were introduced showing the deposit on Oct. 31, 1907, by Hattie C. Case of a New York draft for $1,000, and also the deposit on the same date by "Hattie C. Case, Guardian of Dott Case", of a New York draft for $1,000. These slips were identified by the testimony of the officer of the bank who made them out, and he testified also to the fact of said deposits. Certain sheets taken from the ledger of the bank were introduced showing the personal account of Hattie C. Case and her account as guardian of Dott Case. It appeared thereby that the only entries in the latter account consisted of an entry showing the deposit on Oct. 31, 1907, of $1,000 and the payment of a check for a like amount on November 14, 1907, balancing the account. Her personal account contained several entries showing, first, the deposit of said sum of $1,000 on Oct. 31, 1907, and, thereafter, a few deposits from time to time of much smaller amounts, aggregating $370, or a total credit on the account of $1,370, and several debit items paid by the bank between November 14, 1907, and March 13, 1909, varying in amount from $20 to $240, the last item being $240 and balancing the account on March 13, 1909. There were two checks charged against this ac-

count on November 14, 1907, for $150 and $80, respectively. Thereafter, November 18, a check for $240 was charged as paid, one for $20, on December 21, and one for $75 on December 30, which are all of the debit items against the account during the year 1907. And no other debit items appear on the account until the succeeding April.

The plaintiff also introduced a check book appearing to have been one used by Mrs. Case, containing several blank checks of said bank and a few stubs with memoranda of other checks torn out. Upon the first stub was entered the number "1", and date "Nov. 13, 1907", amount "1000" in the column for dollars, and the words "Pay to Barr for mortgage". The second stub was also numbered "1" and dated November 13, 1907, and indicated that the check was for $80, and contained the words "Pay to J. C. Barr for Mortg". The words "Pay to" and "For" were printed on each stub, the others written. The next stub, which has no connection with this particular matter, and is important here only because it is numbered "2", is also dated Nov. 13, 1907, states that it was for $150, and was apparently written by the same person as the other two. In connection with this check book, it was first attempted to be shown that the memoranda on the first two stubs were in the handwriting of Mrs. Case. But the witness who at first so testified changed his testimony upon further consideration, and we think it appears from the evidence that the writing on said stubs was by somebody other than Mrs. Case, though probably by somebody for her and at her request at the time of drawing the checks. The check for $1,000, represented by the first stub, and paid out of the account in the bank in the name of Mrs. Case as guardian, appears to have been lost, for it could not be found either among the papers of Mrs. Case, her successor as guardian, or the bank.

In our opinion, this evidence, if it stood alone, would be sufficient to sustain the finding of the court as to the use of the ward's funds. Aside from the coincidence of the dates of the payment of the note and the ·check for $1,000, as shown by the stub aforesaid, the fact of the payment of a

check for that amount the next day out of the ward's account at the bank, kept in the name of her mother as guardian, and the release of the mortgage the same day, the memorandum on the check stub, the fact that the amount in the guardian's personal account was all drawn out from time to time by checks for small amounts, and the circumstances of the mortgage,—the fact that it and the note had been executed by the ward's parents and was a lien upon the family homestead, which continued to be occupied by mother and daughter—the guardian and ward, as a home after the death of Mr. Case, these facts strongly indicating that Mrs. Case had paid at least the principal of the note and mortgage with her ward's money, we think the fact is significant that the first and second stubs of Mrs. Case's check book, bearing the same date, and each indicating that the check was drawn to pay Barr for mortgage, were each numbered "1", while the next stub, of the same date, stating a different purpose, was numbered "2". The fact of numbering these two checks "1", as indicated by the respective stubs, would be entirely proper if one of them, the check for $1,000, had been signed by Hattie C. Case as guardian and the other had been signed by her personally. And in connection with the evidence as to the payment of the two checks at the bank, the first out of the guardian account, and the second out of the personal account of Mrs. Case, we are inclined to think that the fact that these checks, as indicated by the stubs, bore the same number, is at least some evidence that the $1,000 check was drawn against the account out of which it was paid. The check for $80, shown by the second stub, with the memorandum as to its purpose, would seem to have been intended for the purpose of paying the interest on the note and mortgage, since that would be the amount of the interest for one year, covering nearly the period the debt had run before it was paid.

But that is not all of the evidence upon the subject. In addition thereto, the officer of the bank who had testified to the deposit slips and ledger sheets aforesaid testified to conversations with Hattie C. Case with reference to the payment

of the Barr mortgage: That upon her speaking to him about the mortgage he suggested to her that she might secure an order of court to use the money belonging to Dott to pay the amount due and take an assignment of the mortgage, and that later she told him that she had taken care of the mortgage, but without stating in what manner. And a Mr. Marvin testified that about a month or six weeks after Mr. Case died he had a conversation with Mrs. Case with reference to the mortgage, he being one of her bondsmen, and she having advised with him a good deal, in which she asked him what he thought about her using Dott's insurance money to pay off the Barr mortgage, and that he told her he thought it was the proper thing to do. That perhaps a month after that he asked her if she had taken up the mortgage and she said that she had, and that she had used Dott's money to take it up.

It is contended that this testimony of Mr. Zullig and Mr. Marvin as to the conversations with Mrs. Case were not received in evidence as against the plaintiffs in error and that such evidence should not be considered. It appears that when the first question with reference to the matter was asked of Mr. Zullig, viz: "Did she ever say anything to you about the mortgage known as the Barr mortgage?" the question was objected to as incompetent, and the court said: "It may be admitted as against the administrator of Hattie C. Case, but not against these defendants, the Gilpatricks." No other objection was made during Mr. Zullig's testimony upon that subject. When Mr. Marvin was asked if he ever had any conversation with Hattie C. Case with reference to the mortgage, that question was also objected to, the court said: "It may be admitted in accordance with the ruling on the other question." This remark of the court could only have had reference to the like question previously propounded to Mr. Zullig. In Mr. Marvin's direct examination also no further objection was made to the remainder of his testimony on the subject. If the record had stopped there we would be inclined to think that court and counsel might have understood that the testimony with

reference to these conversations with Mrs. Case on the direct examination of said witnesses was admitted in evidence only as against the administrator, and not as against the defendants who are the plaintiffs in error here, and we should doubt the right of the court to consider the same.

But, as above stated, the only defendants appearing at the trial were the two Gilpatricks, plaintiffs in error here, and notwithstanding that the evidence of said conversations had been admitted as against the administrator only, and not as against these plaintiffs in error, their counsel cross-examined Mr. Marvin at length about the conversations he had testified to, and upon such cross-examination said witness repeated substantially what he had said in his direct examination concerning the matter. Under the circumstances, the practical effect of such cross-examination by the plaintiffs in error was to make the witness their own, and they cannot, therefore, properly complain that the evidence brought out thereby is not in the case as against them.

Concluding that the evidence was sufficient to sustain the finding of the court with reference to the use of the ward's money to pay the note and mortgage in question, and that being the only question raised upon the merits, the judgment will be affirmed. *Affirmed.*

BEARD, C. J. and BLYDENBURGH, J., concur.