The STATE of Wyoming, Plaintiff,

v.

Ronald SELIG, Defendant.

No. 5411.

Supreme Court of Wyoming.

Oct. 29, 1981.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division, Allen C. Johnson, Senior Asst. Atty. Gen., and Nancy G. Hinckley, Big Horn County and Pros. Atty., for plaintiff.

Richard H. Honaker, Director, Wyoming Public Defender Program, and John V. Lake, Jr., Asst. Public Defender, for defendant.

Before RAPER, THOMAS, ROONEY and BROWN, JJ., and LIAMOS, District Judge.

ROONEY, Justice.

Upon application of the Attorney General,[1] this court allowed the filing of a bill of exceptions under the provisions of §§ 7–12–102 to 7–12–105, W.S.1977. The bill of ex-

---

1. Section 7–12–102, W.S.1977 provides:

"The prosecuting attorney may take exceptions to any opinion or decision of the court during the prosecution of the cause; and the bill containing the exceptions upon being presented, shall, if it be conformable to the truth, be signed and sealed by the court, which shall be made a part of the record, and be in all respects governed by the rules established as to bills of exceptions in civil cases, except as herein provided."

Section 7–12–103, W.S.1977 provides in part:

"The prosecuting attorney may present such bill of exceptions to the supreme court

and apply for permission to file it with the clerk thereof, for the decision of such court upon the points presented therein * * *."

Subsequent to the enactment of §§ 7–12–102 and 7–12–103, § 9–2–505, W.S.1977 was enacted. It provided among other things that the attorney general "shall represent the state in all criminal cases in the supreme court," thereby repealing by implication the direction in § 7–12–103 that the prosecuting attorney be the one to institute action thereunder. In this instance the application for a bill of exceptions was signed and presented by both the attorney general and the prosecuting attorney.

ceptions challenges the trial court's refusal to give the lesser-included offense instruction requested by the prosecution at the trial of this matter. The defendant was charged with three counts of first-degree murder of three hunters in the Big Horn mountains. He was tried twice on these charges. During the first trial, presided over by Judge Dixon, the prosecution requested jury instructions on second-degree murder and voluntary manslaughter in addition to instructions on first-degree murder. The instructions on these lesser offenses were refused and the jury was instructed only on first-degree murder and self-defense. The jury could not reach a verdict and a mistrial was declared on September 25, 1980.

On October 6, 1980, the prosecution filed a motion pursuant to Rule 23(d), W.R.Cr.P., for the peremptory disqualification of Judge Dixon and the case was ultimately transferred to Judge Ranck on October 16, 1980. At the second trial, the prosecution requested instructions on the lesser offenses of second-degree murder and manslaughter, and they were given. The jury returned a verdict of not guilty on all counts.

On October 17, 1980, Judge Dixon was presented with a bill of exceptions. He certified it, under seal, to be correct on October 27, 1980, and we allowed it to be filed on November 7, 1980.

## MOTION TO STRIKE

Before addressing the substantive issue presented by the bill of exceptions,[2] we must first consider the following two preliminary matters raised by a motion of defendant to strike the bill of exceptions:

1. Was the bill of exceptions signed by a judge who had lost jurisdiction to do so? and

2. Is the matter rendered moot by the fact that instructions on lesser-included offenses were given at the second trial?

The bill of exceptions was approved by Judge Dixon. He presided at the trial wherein the alleged error occurred, but the case had been transferred to another judge at the time he approved the bill of exceptions. The defendant contends that Judge Dixon did not have jurisdiction over the case at the time he approved the bill of exceptions, and that his approval was therefore invalid.

A bill of exceptions is the exclusive means for the prosecution to seek review of an adverse ruling made during the trial. *State v. Heberling*, Wyo., 553 P.2d 1043 (1976); *State v. Benales*, Wyo., 365 P.2d 811 (1961); *State v. Ginther*, 53 Wyo. 17, 77 P.2d 803 (1938); *State ex rel. Gibson v. Cornwell*, 14 Wyo. 526, 85 P. 977 (1906). It is now a statutory proceeding, and the statutory requirements must be met. *State v. Ginther*, supra, and *State ex rel. Gibson v. Cornwell*, supra. One of the statutory requirements is that the bill "be conformable to the truth." Section 7–12–102, W.S. 1977.[3] To meet such requirement, the judge who approves the bill must have knowledge of the facts set out therein.

"If the supreme court shall be of the opinion that the questions presented should be decided upon, they [sic] shall allow the bill of exceptions to be filed *and render a decision thereon*." (Emphasis added.)
Section 7–12–105, W.S.1977 provides:
"The judgment of the court in the case in which the bill was taken shall not be reversed nor in any manner affected, but the decision of the supreme court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered, or which may afterwards arise in the state."

2. Under common law and code pleading and practice, bills of exceptions were statements which put controverted rulings or decisions on the record for the information of the appellate court. They listed the objections or exceptions to rulings taken during trial. They reflected the errors in the record on which appeals, petitions for certiorari, writs of error, etc., were predicated. Writs of error have been abolished in civil cases by the Rules of Civil Procedure and in criminal cases, insofar as the defense is concerned, by the Rules of Criminal Procedure. However they provide a statutory discretionary means through which the prosecution may secure a review of alleged errors in criminal cases. Section 7–12–104, W.S.1977 provides:

3. See fn. 1.

At a time when bills of exception were used in civil actions, we held that a former judge no longer in office was the proper person to approve a bill of exceptions. Such was referred to as a ministerial act. *Stirling v. Wagner*, 4 Wyo. 5, 31 P. 1032 (1892), reh. denied 4 Wyo. 5, 32 P. 1128 (1893); *Gilpatrick v. Perry*, 26 Wyo. 538, 188 P. 442 (1920). See *Vines v. State*, 19 Wyo. 255, 116 P. 1013 (1911).

> "But in all such cases, the bill of exceptions is signed *nunc pro tunc* ; and it purports on its face to be the same as if actually reduced to form, and signed, pending the trial. And it would be a fatal error, if it were to appear otherwise; for the original authority, under which bills of exceptions are allowed, has always been considered to be restricted to matters of exception taken pending the trial, and ascertained before the verdict." *Walton v. United States*, 22 U.S. 651 (9 Wheat. 288), 6 L.Ed. 182 (1824).

In a later case the Supreme Court ruled that the fact that a bill of exceptions is not dated back to a date during the trial or filed *nunc pro tunc* as of a date during the trial is at most an irregularity. *French v. Edwards*, 80 U.S. (13 Wall.) 506, 20 L.Ed. 702 (1872). See also *Hunnicutt and Barnes v. Peyton*, 102 U.S. 333, 26 L.Ed. 113 (1880).

It is logical to require the approval to be by one with knowledge of whether or not the contents of a bill of exceptions are "conformable to the truth," rather than by one who came into the case at a later date.

In contending that this matter was rendered moot because the lesser-included offense instructions were given at the second trial, the defendant misconceives the purpose of these proceedings. The decision in this matter cannot affect the judgment already rendered in it. Section 7–12–105, W.S.1977.[4] The purpose set forth in that statute is to "determine the law to govern in any similar case" to arise in the future. *State v. Rideout*, Wyo., 450 P.2d 452 (1969).

■ All cases arising from bills of exceptions filed by the prosecution in criminal cases are moot from the standpoint of the defendants in such cases. They are not moot with respect to the determination of the specified issues in future cases. The fact that the issue was resolved in a different and contrary fashion by each of two judges in this case reflects the desirability to establish a positive answer to the issue.

" ' * * * A court ordinarily will not entertain an action or proceeding merely for the purpose of passing on a moot question or abstract proposition, unless * * * the determination of such question or proposition is necessary to the disposition of an actually pending controversy, *or unless some question of general public interest is involved.*' " (Emphasis added.) *Morad v. Wyoming Highway Department*, 66 Wyo. 12, 203 P.2d 954, 957 (1949), citing 1 C.J.S. Actions § 17.

In *Eastwood v. Wyoming Highway Department*, 76 Wyo. 247, 301 P.2d 818 (1956), this court ruled that the constitutionality of a statute was of sufficient public interest and importance to merit a full discussion by the Supreme Court even though the particular case before the court was moot.

■ The bill of exceptions was here approved by the proper judge, and the issue presented by it was not rendered moot by the fact that the lesser-included offenses instructions were given in the second case.

## LESSER–INCLUDED OFFENSES INSTRUCTIONS

Rule 32(c), W.R.Cr.P., which is identical to Rule 31(c), F.R.Cr.P., specifically authorizes a jury to consider lesser-included offenses:

> "The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense."

■ The purpose of this rule is to "aid the prosecution where its proof failed to make out all of the elements of the offense

4. See fn. 2.

charged." 8A Moore's Federal Practice-Criminal Rules, § 31.03[1]. See *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). But it has also become "beneficial to the defendant because it affords the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal." *Beck v. Alabama*, supra, 100 S.Ct. at 2387; 8A Moore's Federal Practice, supra, *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); 2 Wright, Federal Practice and Procedure: Criminal, § 515, n. 54.

One test for determining whether the prosecution or defense is entitled to a lesser-included offense instruction [5] is set out succinctly in *United States v. Chapman*, 615 F.2d 1294, 1299 (10th Cir. 1980), cert. denied 446 U.S. 967, 100 S.Ct. 2947, 64 L.Ed.2d 827 (1980):

"This Court has held that a defendant is entitled to a lesser-included offense instruction when the following five elements are present: (1) a proper request is made; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) there is some evidence that would justify conviction of the lesser offense; (4) the proof on the element or elements differentiating the two crimes is sufficiently in dispute so

that the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense, and (5) there is mutuality, *i.e.*, a charge may be demanded by either the United States or the defense. [Citation.]"

These same conditions have also been recognized in *United States v. King*, 567 F.2d 785 (8th Cir. 1977), cert. denied 435 U.S. 945, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978); *United States v. Whitaker*, 447 F.2d 314, 317 (D.C. Cir.1971); and *United States v. Thompson*, 492 F.2d 359 (8th Cir. 1974). The conditions provide guidelines from which a determination can be made as to whether or not the evidence would permit the jury rationally to find the defendant guilty of the lesser offense but not guilty of the greater and whether or not the defendant and prosecution had fair notice of such probability. If so, the lesser-included offense instructions would be proper.

All of these conditions are satisfied in this case. The request by the prosecution for instructions on the lesser-included offenses of second-degree murder and manslaughter was timely. Compliance was had with Rule 8 of the Uniform Rules for the District Courts of the State of Wyoming.[6]

 The elements of the lesser offense of manslaughter [7] are identical to part of

---

**5.** The Model Penal Code, § 1.07(4), 10 U.L.A. Criminal Law & Procedure, defines an offense as included when:

"(a) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or

"(b) it consists of an attempt or solicitation to commit the offense charged or to commit an offense otherwise included therein; or

"(c) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission."

2 Wright, Federal Practice and Procedure: Criminal § 515 and 1980 Supp., n. 58, cites *Government of Virgin Islands v. Aquino*, 378 F.2d 540, 554 (3rd Cir. 1967); *James v. U. S.*, 16 Alaska 513, 238 F.2d 681, 683 (9th Cir. 1957); *Olais-Castro v. U. S.*, 416 F.2d 1155 (9th Cir. 1969); and *Larson v. U. S.*, 296 F.2d 80, 81 (10th Cir. 1961), for the definition that "[o]ne offense is necessarily included in another if it is impossible to commit the greater without also having committed the lesser. The element of

mutuality was rejected in *United States v. Johnson*, 637 F.2d 1224 (9th Cir. 1980).

**6.** Rule 8, Uniform Rules for the District Courts of the State of Wyoming, requires:

"Requests for instructions, other than those necessitated by unanticipated events during the trial, must be presented in writing to the court prior to the commencement of the trial. All additional requested instructions must be presented in writing in advance of the arguments." See *Moore v. State*, Wyo., 542 P.2d 109, 112 (1975).

**7.** Section 6–4–107, W.S.1977, provides:

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty (20) years."

the elements of murder in the second degree,[8] and to part of those of murder in the first degree.[9] All three crimes contain the element of killing of a human being. The elements of the lesser offense of murder in the second degree are identical to part of the elements of murder in the first degree. Both contain the elements of the killing of a human being with malice and purpose. See *State v. Helton*, 73 Wyo. 92, 276 P.2d 434 (1954); *Searles v. State*, Wyo., 589 P.2d 386 (1979); *Brantley v. State*, 9 Wyo. 102, 61 P. 139 (1900).

The third and fourth conditions prerequisite to the giving of lesser-included offense instructions necessitate consideration of the evidence in the given case. The evidence must be considered to determine whether or not there is evidence upon which a conviction for the lesser offense can be founded, and to determine whether or not there is sufficient dispute as to such evidence to justify a conviction on the lesser offense rather than the greater.

■ A killing resulting from the act of a hired killer is an example wherein the evidence would not permit conviction of lesser offenses. A killing in the perpetration or attempted perpetration of the crimes listed in § 6-4-101(a), W.S.1977 [10] is another. The proposition has been expressed as follows: A trial court need not give a lesser-included offense instruction if the evidence clearly shows that the defendant is either guilty or not guilty of the offense charged, *Jones v. State*, Wyo., 580 P.2d 1150 (1978); *Richmond v. State*, Wyo., 554 P.2d 1217 (1976), reh. denied 558 P.2d 509 (1977); *Oldham v. State*, Wyo., 534 P.2d 107 (1975); *Keeble v. United States*, supra, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). However, such instruction should be given if there is evi-

dence which would allow the jury to rationally find the defendant guilty of the lesser offense. *Oldham v. State*, supra; *Keeble v. United States*, supra.

" 'While it has been held that in order to warrant giving an instruction there must be some "appreciable" or "substantial" evidence supporting it, since, as appears in § 1138 *supra*, the weight and sufficiency of the evidence to establish a fact in issue are a question for the jury, *it is generally recognized that any evidence which will authorize the jury to find on it, although in the opinion of the court it may be weak, inconclusive, or unworthy of belief, is sufficient to justify an instruction on the issue raised by such evidence, and even positive testimony is not required, for it is sufficient if the fact in issue reasonably may be inferred from circumstances proved.* However, in order to warrant giving an instruction, the evidence should be sufficient fairly to raise the question involved therein.' " (Emphasis in original.) *Goodman v. State*, Wyo., 573 P.2d 400, 409 (1977), quoting from 23A C.J.S. Criminal Law § 1313.

■ In this case, the evidence was such as would satisfy the third and fourth conditions. A consideration of the evidence would result in a conviction for the lesser-included offense of murder in the second degree or of manslaughter. And the proof of the elements differentiating the greater and lesser offenses was sufficiently in dispute for the jury to consistently find the defendant guilty of the lesser offenses and innocent of the greater ones.

The three hunters were found dead from gunshot wounds in the cooking tent of their hunting camp.

---

**8.** Section 6-4-104, W.S.1977, provides:

"Whoever purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and shall be imprisoned in the penitentiary for any term not less than twenty (20) years, or during life."

**9.** Section 6-4-101(a), W.S.1977, provides:

"(a) Whoever purposely and with premeditated malice, or in the perpetration of, or

attempt to perpetrate any rape, sexual assault, arson, robbery or burglary, or by administering poison or causing the same to be done, kills any human being, or whoever purposely and with premeditated malice kills any peace officer, corrections employee or fireman acting in the line of duty, is guilty of murder in the first degree."

**10.** See fn. 9.

An investigation reflected that defendant could have been involved in the incident. The investigator testified as follows concerning an interview with defendant:

"A. There—I asked Ron—I said, Ron, did you shoot and kill those three men on Horse Creek mesa? And he said, yes, I did. And I said, Ron, what happened that caused you to do this. Ron stated to me that I saw them go into my camp and take my things. I asked Ron, I said, well, what did you see them take? He said, they took my gas, they took my boots, they took my lantern and they took some food. I asked Ron, I said after they left camp what did you do? He said, I followed them down to their camp. I asked them—I said, did you do this in your vehicle? He said, yes. I followed them down to their camp. I said, did you go all the way down? He said, I parked up behind their camp. I said, what did you do then? He said, I got out of the vehicle and I walked down through the trees to the tent. And I asked Ron, what did you do then? He said, I shot the three men. And I asked Ron, I said, after this had happened, what did you do then, did you leave the mesa? He said, no. I went back to my camp and I broke my camp, and by that I understood him to mean he tore down his tent, what he had there, gathered up his supplies, then I left the mesa."

Defendant's testimony in court was substantially the same. He said that he opened the flap of the tent and asked for a return of his property. After he was told that he was not going to get it back, he saw one of the men's hands moving behind a box in a manner as if loading a gun. When the man made a sudden move, defendant said he shot him. He said that he shot the second man when he reached for a knife, and that he shot the third man when he reached for an axe. He said he then took

his flashlight and lantern and went home. He stated that he did not think of killing the men, and, in answer to a question as to whether or not he meant to kill them, he said, "[a]t the time I pulled the trigger, yes."

After the shooting, no guns were found in the tent, all knives were sheathed, and the axe stood in a corner.

Thus, there was evidence which would justify a conviction of murder in the second degree, i.e., the shooting was not premeditated. Defendant testified that he did not think of killing the men until the act was in accomplishment. Only at that time did he intend to kill them. Testimony established defendant's malice resulting from the taking of his property,[11] and the shooting was admittedly done purposely. Although premeditation can occur in the space of a few seconds, whether or not such occurred is a jury question.

There was also evidence from which the jury could rationally find defendant guilty of voluntary manslaughter. It could find that the killing was done in the heat of passion resulting from defendant's attempt to recover his belongings in the face of the refusal by the three men to accede thereto in a menacing and aggressive fashion.

"* * * In *State v. Sorrentino*, 31 Wyo. 129, 224 P. 420, 423, we held that this court may reduce a homicide to manslaughter if committed under circumstances sufficiently mitigating or extenuating, such as fear or terror of such a character or degree as to render the accused incapable of cool reflection. See *Nunez v. State*, supra, at 729; and *State v. Helton*, 73 Wyo. 92, 276 P.2d 434, 443. * * *" *Doe v. State*, Wyo., 569 P.2d 1276, 1279 (1977).

The evidence from which the jury could rationally find defendant guilty of any one

---

11. Malice was defined in *Nunez v. State*, Wyo., 383 P.2d 726, 729 (1963) as follows:

"* * * The term, as used in the law of homicide, has often been defined as the *intentional* killing of a human being by another, without legal justification or excuse and un-

der circumstances which are insufficient to reduce the crime to manslaughter. 26 Am. Jur., Homicide, § 40, pp. 183–184. See also *State v. Ogilvie*, 180 Or. 365, 175 P.2d 454, 459; and *State v. Myers*, 248 Iowa 44, 79 N.W.2d 382, 390." (Emphasis in original.)

of the three offenses was not only present, it was sufficiently in dispute for the jury to find him guilty of any one of them. Of course, his testimony of self-defense presented an alternative finding of not guilty.

 The final condition to the entitlement of the lesser-included offense instruction is mutuality—either party must be able to demand it. If the defendant is without notice that he may have to defend against the lesser charges, the instruction would be improper. The question of notice does not exist in connection with the charge of murder in the first degree as it pertains to murder in the second degree and voluntary manslaughter.

> " * * * But it is evident that in charging an intent to commit murder in the first degree there is necessarily included a charge of intent to commit murder in the second degree and voluntary manslaughter. * * * " *Brantley v. State*, supra, 61 P. at 139–140.

The requirement of notice in any event is probably met through compliance with Rule 8, Uniform Rules for the District Courts of the State of Wyoming.[12]

## CONCLUSION

It was error for the trial court in the first trial to refuse the prosecution's request [13] for the lesser-included offenses instructions. Such instructions should be given when the five conditions herein set out are met.

THOMAS, Justice, dissenting.

I must respectfully dissent from the views of the majority of the court in this case. I am convinced that the court in this instance improvidently allowed the filing of

the bill of exceptions. I would so hold and would not treat with the merits of this case.

I must point out that there was only one case involving the State of Wyoming against Ronald Selig. While there were two trials, the first of which ended in a mistrial, and the second of which resulted in a verdict of not guilty, the lesser-included-offense instructions which the State of Wyoming contends should have been given in the earlier trial in fact were given in the last trial. I therefore raise the question, where is the error of which the State of Wyoming complains?

I am concerned about another proposition with respect to the granting of the bill of exceptions. The chronology of events set forth in the majority opinion demonstrates that the bill of exceptions was allowed by this court prior to the completion of the case. It is my view that § 7–12–105, W.S. 1977, in referring to the judgment of the court, assumes that the case has been completed in the trial court before the bill of exceptions is to be pursued. It well may be that the State of Wyoming will regard this case as precedent for presenting to this court any number of adverse rulings prior to trial in criminal cases, and I see no reason why the State should not feel justified in so doing. I would surmise, however, that very few of them will be acted upon.

With respect to the proposition that the first trial judge did not give the lesser-included-offense instructions, but the second trial judge did, I perceive that this dichotomy of action was justified by antithetical rulings by the two trial judges on the admissibility of Selig's inculpatory statement. This statement was obtained from Selig while he was hospitalized after being injured in a car wreck. While he was represented by counsel, his counsel was not present. In the first trial, the admission of

---

12. See fn. 6.

13. We do not here address the question of whether or not a lesser offense instruction must be given in certain cases even if not requested by either party. In *Beck v. Alabama*, supra, the United States Supreme Court held that a sentence of death could not be constitu-

tionally imposed after a jury verdict of guilty of a capital offense where an Alabama statute precluded a lesser offense instruction in a capital case, thus not permitting the jury to consider a verdict of a lesser-included offense, and the evidence would have supported such a verdict.

Selig was available to the State of Wyoming because the trial judge had denied a motion to suppress. Consequently the evidentiary matter in that trial was different from the evidentiary matter in the second trial in which the trial judge granted the motion to suppress Selig's admission. Because of this ruling Selig did not testify in the second trial while he had taken the stand in the first trial. This difference in testimony well may bring the case within the rule that "[T]he trial court should only give such instructions as arise from the evidence and that when the evidence shows the defendant is either guilty or not guilty of the higher grade of the offense, the court is not required to instruct on the lesser offense." *Oldham v. State*, Wyo., 534 P.2d 107, 109 (1975). See also *Neilson v. State*, Wyo., 599 P.2d 1326 (1979); *Jones v. State*, Wyo., 580 P.2d 1150 (1978); *Richmond v. State*, Wyo., 554 P.2d 1217 (1976), reh. denied 550 P.2d 509 (1977); and *Ross v. State*, 16 Wyo. 285, 93 P. 299, reh. denied 94 P. 217 (1908). It is to be noted that this line of authority is recognized and accepted in the majority opinion. I would submit that this may have been the rule applicable in the first trial, while it was not applicable in the trial resulting in the finding of not guilty.

Recognizing that there may in fact have been no error entitling the State of Wyoming to complain pursuant to the bill-of-exceptions procedure, the majority opinion justifies treating with the matter under the proposition that since this issue was resolved in a contrary fashion by each of two judges, it is desirable to establish a positive answer to the issue. The positive answer to the issue then is that if the five factors outlined in *United States v. Chapman*, 615 F.2d 1294, 1299 (10th Cir. 1980), cert. denied 446 U.S. 967, 100 S.Ct. 2947, 64 L.Ed.2d 827 (1980), are present the lesser-included-offense instructions should be given to the jury, unless the rule of *Neilson v. State*, supra, *Jones v. State*, supra, *Richmond v. State*, supra, *Oldham v. State*, supra, and *Ross v. State*, supra, is applicable. The "positive" answer is that the giving or not giving of the lesser-included-offense instructions depends upon the analysis of the evidence by the trial judge, and he must be afforded some discretion in making his ruling. *State v. Goetinna*, 61 Wyo. 420, 158 P.2d 865 (1945); *State v. Gonzales*, 46 Wyo. 52, 23 P.2d 354 (1933). I cannot regard that as a definitive answer.

I see some additional mischief in what the court has done. I cannot help but believe that a trial judge in the State of Wyoming is likely to give the lesser-included-offense instructions in every homicide case in which either party requests them. I perceive that as resulting in a substantial dilution of the capital punishment statute which the legislature has adopted. Section 6–4–101, W.S.1977. I believe that in many instances the jury is likely to opt for a conviction of an offense which does not result in capital punishment if that course is authorized by the instructions of the court. *State v. Goettina*, supra. I also perceive this as damaging to the interests of some defendants in homicide cases. While empirical data cannot be presented for obvious reasons, most scholars and skilled practitioners of the law believe that when the alternatives of lesser-included offenses are made available there is a high probability that a jury will compromise on a conviction of some lesser-included offense. In a case in which the jury might acquit if it were forced to deal with the issue of guilty or not guilty of the higher offense, the opportunity to compromise is disadvantageous to the defendant.