## Kenton Distributing Co. v. Alcoholic Beverage Control Board.

May 30, 1944.

A. E. Funk, Sarah Layman and James R. McGarry for appellant.

Eldon S. Dummit, Attorney General, and Roy House and Wallis Bailey, Assistant Attorneys General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Appeal is from a judgment confirming an order of appellee Board approving the action of the Distilled Spirits Administrator in refusing appellant's application for license to sell and distribute alcoholic beverages for the fiscal year 1943-44. The hearing was had on August 20, 1943, and the Board concluding that the "evidence introduced does not show the operations will be sufficient to remove the business from the category of a dormant license," as defined in order No. 140 of the Alcoholic Beverage Control Board of date June 16, 1943. The order reads as follows: "It is ordered by the Alcoholic Beverage Control Board, and the Distilled Spirits Administrator is so instructed, that no license shall be issued which is to be held dormant. It is further ordered that no business shall be licensed and permitted to operate as a token operation, but there must be a bona fide operation under the license issued."

Section 241.060, KRS, provides: "The board shall have the following functions * * * and duties: (1) To adopt reasonable regulations governing the procedure relative to applications for and revocations of licenses and relative to all other matters over which the board has jurisdiction, and for the supervision and control of manufacture, sale, transportation, storage, advertising and trafficking of alcoholic beverages. Regulations need not be uniform in their application, but may vary in accordance with reasonable classifications."

"No regulation hereafter made by a state agency shall become effective until an original and two duplicate copies of the regulation are filed in the office of the Secretary of State." KRS 13.020.

It is admitted by stipulation that license No. WH-4, held by applicant for the fiscal year 1942-43 "has been dormant and it had not been doing a bona fide wholesale liquor business since January 1, 1943." This, of course, related to six months nonoperation in the past, and was rightfully considered by the Board in determining the only question in the case; whether or not the application for a new license, or renewal of the old one, in the discretion of the Board, was in good faith; not to be a token license, or one as the order states "under which there must be a bona fide operation." Both parties construed

the order to have the effect of relating to a license to be issued, though there is no doubt under the facts of the case, as presented, the Board could have revoked the former license, where the nonoperation existed for a reasonable time. KRS 243.490. It was competent for the Board to consider the fact that the former license had been dormant, in reaching its conclusions, just as it was competent for the Board to consider the evidence of past history of nonperformance on the part of licensee in order to determine whether or not the pending application was for bona fide operation. This conclusion disposes of appellant's contention that the Board could not consider evidence of what applicant had or had not done in the past.

The testimony of the administrator went no further than to show the admitted fact that the business had been dormant since January 1, 1943, and that he had made personal investigation. Mr. Rice, president of the Kenton Company, and one other officer, testified at length. It will only be necessary to review Mr. Rice's testimony. Admitting the dormancy of the business during the period, he said that the reason was the failure or inability to get competent help to operate the business due to war conditions, and that his company could not compete with the neighboring city of Cincinnati in paying wages. He thought that the war situation had improved or might improve to such an extent as to relieve this difficulty, a matter on which the Board's judgment might have been worth something. He also showed that there had been some difficulty in procuring merchandise, due mainly to the stringent activities of O. P. A., which situation he thought might be ameliorated. He said that the Company had bought some whiskey and believed that it could make satisfactory arrangement for some wines. The Company had warehouse receipts for several hundred barrels of whiskey; he was confident that this liquor could be bottled and put to sale by the Kenton Company.

It was not clearly shown when these receipts came into the possession of the Company; some were held by the wife of witness, and he admitted that no effort had theretofore been made to have the liquor bottled. There was also doubt as to the company's ability to obtain lease of the place named in the application. The only positive fact stated was that if the permit be granted the company would operate.

It developed during the testimony that Mr. Rice, the witness, was president of both the Kenton and Dixie Distributing Companies. He had bought the majority of the Dixie stock in January 1943; others holding qualifying shares. At the same time the Dixie bought some, or one of the lines of whiskey formerly distributed by Kenton, which witness said would be given back to Kenton, if the license should be issued. It was shown that the Dixie had not been able to get, or had not been offered one well-known line of liquors, and Mr. Rice said that one reason for buying Kenton was to get the Yellowstone line. When asked if that was the only reason for buying Kenton, he frankly said the other reason was "because we wanted to keep out competition." This statement no doubt had much to do with the Board's justified determination that the renewal of the license was not sought in good faith.

Section 243.570 provides that on appeal from a ruling of the Board the courts are limited to determination as whether or not (a) "The board acted without or in excess of its power; * * * (c) if questions of fact are at issue whether or not any substantial evidence supports the order appealed from." The proof, which is briefly but substantially recited, was amply sufficient to justify the Board in concluding that the license was not sought for a bona fide operation, and there can be no doubt but the Board acted within statutory power.

Appellant's counsel contends that order No. 140 did not constitute a valid regulation, because not filed as per statute with the Secretary of State. We need not determine whether or not the regulation is of that character required to be filed in order to be effective. However, we are of the opinion that the determination of the Board did not depend upon the order, or its being made effective by being filed in the proper office.

The Board's authority and power did not rest on the promulgation of the order; it appears to have been no more than a notice that it would, under certain conditions, exercise a power given by the statute, a matter of which Mr. Rice admits he had full knowledge and notice prior to his application and the hearing. The proof shows that certain correspondence advised him of the intention of the Board, and as we read the proof the officers were using their efforts to have him make a proper showing of intention to operate in good faith.

Our reason for the conclusion expressed is based on statutory provisions. Section 243.030 provides for issuance by the Board of various alcoholic beverage licenses. Among them is (5) wholesaler's annual license to traffic in such beverages. KRS 243.450(2) provides, ''A license that might be issued under KRS 243.020 to 243.670 may be refused by a state administrator for any reason which he, in the exercise of his sound discretion, may deem sufficient.''

Appellant frankly admits that there is no question of property rights involved, but insists that since appellant had been theretofore licensed, the refusal to grant a renewal, under the proof, is similar to a suspension or revocation of the extant license, and the refusal was purely arbitrary on the Board's part. There could be little doubt of the Board's power to revoke, had it so chosen, under the facts disclosed on the hearing, had they been produced theretofore.

We do not conceive that the Board acted arbitrarily, or beyond its authority. The fact is that it extended to applicant opportunity to put itself in position to show that it was seeking a permit with the purpose of a good faith future operation. It failed to show facts which manifested more than a probability that it could or would operate to any extent, and we conceive the frank confession that one purpose in procuring the license was to cut out competition, at least as between applicant and the Board, was sufficient reason for refusal. Under the proof as it appears we are compelled to affirm the judgment.