## Brown et al., Kentucky Alcoholic Beverage Control Board, v. Baumer.

Nov. 23, 1945.

Eldon S. Dummit, Attorney General, and H. K. Spear, Assistant Attorney General, for appellant.

A. E. Funk, Chat Chancellor, and Sarah Layman for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

In May, 1945, appellee applied to appellant, hereinafter called Board, for renewal of his wholesaler's license for the year July 1, 1945, to June 30, 1946. On June 8, the Administrator wrote appellee: "Owing to your conviction in the Federal Court last year and the proof in the trial of George Gould, and other irregularities, the Board feels that you are not a suitable person to hold a wholesaler's liquor license, and in view of your past record your license W. H. 16 may not be renewed." Baumer was granted a Board review, and upon hearing the Administrator's ruling was approved.

The foregoing facts were set up in an appeal to the circuit court, and in addition it was alleged that during October, 1944, appellant was convicted in the Federal Court for violation of O. P. A. ceiling price regulations; that following conviction he was cited to appear before the Board on November 22, 1944, to determine whether the conviction constituted sufficient grounds for revocation or suspension of his permit. The Board, on a guilty

plea, entered an order reciting that appellee had violated KRS 243.490 by failing to comply with regulations of the Board in respect of sale of distilled spirits; that his conviction was for violation of regulations in the sale of distilled spirits above maximum prices, and suspended his license for 25 days from December 31, 1944, which order was fully complied with.

It is alleged that the refusal to renew was based on the same facts and circumstances upon which the order of suspension had been entered, hence the Board was without authority to refuse renewal because appellee had already been punished for the offense which was the basis of what is termed the second punishment. The prayer was to remand with directions to the Board to renew the license.

The Board answered, admitting some facts stated in the petition, but denied "all the other allegations," which we take to mean a denial of conclusions and the allegation that the order denying renewal was based on the same facts upon which suspension was grounded. The cause was submitted on the Board's transcript and the court held that the Board on its first hearing had found that the proof of conviction for violation of O. P. A. ceiling price orders was not sufficient to justify revocation, and that appellee had not committed any act since the date of suspension which would authorize the Board to refuse renewal. Under such circumstances the court held the refusal to have been arbitrary and unauthorized by law, and that a denial would constitute double punishment. The cause was remanded with directions to the Board to issue the license sought. This appeal followed.

On the hearing the Board had before it the judgment of the Federal Court which showed that Baumer plead guilty to two of eight counts of selling distilled spirits in excess of O. P. A. prices, and was adjudged to pay fines aggregating $4,000, and given concurrent sentences of imprisonment for six months, which were suspended and Baumer was placed on probation for one year. At this hearing the Administrator testified it was true that Baumer had been cited before the Board for violation of the Federal O. P. A. regulations, and it suspended his license for the 25 day period, but "we did not have a lot of proof at that time; the Federal authorities were

requesting a light suspension so that Baumer might be used as a witness in the Federal Court in the Gould case.'' It was his contention that the suspension would not bar the Board from refusing renewal, since ''a lot of violations that we did not know about came up in the Gould case.'' He said the refusal was based partly on the fact that Baumer was convicted in the Federal Court, ''but the trial in the Gould case set out. so many violations that I, as administrator, felt that he was not a suitable person to whom a license should be issued. I am using the fact of his conviction, and additional facts brought out in the Gould trial, in concluding that he is not a suitable person. I doubted very much when he was suspended that we should have done that, but the Federal men were begging for light suspension so he would not be out of business when he was used as a witness.''

Kinnard, Assistant District Supervisor for the Government Alcohol Tax Unit, testified that he was actively engaged in investigating the charges against Gould and Baumer. He examined Baumer's records and found that Baumer had passed all black market profits to Gould. Baumer had assisted the Government in clearing up the black market. Baumer was cited for revocation of his government license (before conviction) and the citation dismissed. On cross-examination he said that Baumer did not disclose information until he called on him, and was co-operative after he was indicted. He had violated O. P. A. regulations from July, 1943, to January, 1944, in about twenty instances, but placed all money to the credit of Gould. This witness, as did others, introduced by applicant, went into detail as to the large scale operations of Baumer in connection with Gould.

Appellee contends that the order of suspension was conclusive, and in legal effect prevented the Board from later considering the conviction or the facts on which it was based, on application for renewal for a succeeding annual period. The argument is that on the first hearing the question presented was whether or not the conviction was such an offense as would authorize a revocation of Baumer's license, and the Board found that it was not sufficient to justify more than a suspension. When we read the proof we cannot conclude that if the Board did so find, it was correct in its conclusion; on the other hand, it is clear that the suspension was to a large extent based on the insistence of Government officials

that a suspension would result in assistance to the Government in the prosecution of Gould, the higher up.

It is then argued that, the Board being a quasi judicial and fact finding body, its determination that the facts on the first hearing were not sufficient to justify revocation, the Board was bound by that conclusion, not in an effort to revoke, but in determining whether or not he was a proper person to whom license should be renewed, or a new license issued for another year. Counsel refers us to Keller v. Kentucky A. B. C. Board, 279 Ky. 272, 273, 130 S. W. 2d 821; Happy Coal Co. v. Hartbarger, 251 Ky. 779, 65 S. W. 2d 977, and Cardinal Bus Lines v. Consolidated Coach Corp., 254 Ky. 586, 72 S. W. 2d 7, 10, which hold that administrative boards and commissions, such as the one here, are quasi judicial bodies. The Cardinal Bus case went somewhat further and said that the doctrine of res adjudicata applies to quasi judicial acts of commissions of motor transportation and other public commissions and administrative boards. This excerpt from that opinion is relied on by appellee: "The rule which forbids the reopening of a matter once judicially determined by competent authorities applies as well to the judicial and quasi judicial acts of public, executive, or administrative officers and boards acting within their jurisdiction as to judgments of courts having general judicial powers."

We find no fault with the foregoing pronouncement of principles, but they are not applicable in the case before us. The matter under discussion in the bus case was whether or not the denial of an application for permit to operate a bus line precluded the commissioner from again hearing and determining the same application. The difference in that and this case is patent; if in the instant case the Board, following suspension, had cited Baumer to appear and show cause why his current license should not be revoked, it might be, though it is not decided, that the Board could not have revoked solely because Baumer had been convicted for violations of Federal or State statutes, one or the other, admittedly the basis of the order of suspension. However, we are not dealing with the question of revocation, but with the question of the right of Baumer to a renewal of his license, or a new license for an ensuing annual period. In determining this request the Board had before it not only the fact of the conviction, but in the meantime,

through its Administrator, and at the hearing, proof of the extent of the numerous violations of the Federal and State Acts by failing to observe the provisions with relation to ceiling prices. The two matters are distinct one from the other. We gather from the rather complicated statutes on the subject that there is little difference in applying for renewal and on original applications for license; the only difference, as far as we observe, being that an applicant for renewal is not required to comply with KRS 243.060, and perhaps others not necessary to point out.

There is little to be said on the matter of double punishment for one offense. The suspension, revocation, or denial of renewal of a license is in no sense in the nature of punishment. Other portions of Chapter 243, KRS, take ample care of penalties. We have often held that a license to sell alcoholic beverages does not involve contractual or property right; that the acceptance of a liquor license carries with it the implication of an agreement that the Board might exercise the power of revocation or denial of renewal in accordance with the terms under which it was granted. Keller case, 279 Ky. 272, 130 S. W. 2d 821. In that case there was a plea of res adjudicata based on the fact that the license holder had been found guilty in a criminal trial for the same violation upon which revocation was sought, but we pointed out that a proceeding to revoke a license for breach of conditions is of a civil and not criminal nature; the same is true as to the process under which renewal or original issuance is sought.

It is admitted, as was stated by the court, that the Board might have revoked Baumer's license on the first hearing. There is no doubt on that score, but we cannot see that the suspension would in any sense operate to deprive the Board of the power to deny renewal, or issuance of a new license. Section 243.450 sets out causes for which a license "that might be issued under KRS 243.020 to 243.670 shall be refused." One cause is if the applicant has done any act for which a revocation of license would be authorized. Again the license shall be refused for any reason which the Administrator in the exercise of sound discretion may deem sufficient. Section 243.500, KRS, provides that a license must be revoked or suspended in the case of sale of alcoholic beverages by the licensee at a price in excess of that fixed by State

or Federal regulations, and under KRS 243.100(5) applicant was not entitled to a license. It follows logically that in application for renewal the Board could not in the face of the statutes issue a license to applicant, since he had admitted the doing of an act for which his license could have been revoked, and barred him from license for two years. Again, the Administrator (upheld by the Board) had, after further investigation of matters arising in the Gould trial (not appearing on Baumer's trial), concluded that applicant was not a proper person to have his license renewed. In this conclusion we cannot say the Board acted arbitrarily, or not in the exercise of a sound discretion. We note that 243.490, KRS, provides that a license may be revoked for any of the reasons for which the administrator would have been required to refuse a license if the facts had been known. By parity of reasoning it can be said that the Board might refuse a license for facts not fully known at the time of suspension. As to the exercise of discretion, see Kenton Dist. Co. v. Alcoholic B. C. Board, 297 Ky. 666, 181 S. W. 2d 64.

Under the facts presented we conclude that the Board had ample grounds for the refusal to renew, and did not abuse the discretion vested by the statute; that the Board was not barred from rejecting the application on the ground that the order of suspension concluded its powers.

Appellee moved to dismiss the appeal on the grounds that the matter presented had become moot, because following the Board's appeal and during pendency, the court had compelled the Board to forthwith issue license to Baumer. This motion was overruled on October 16, but without motion to set aside that order, we are asked in brief that the motion be treated as having been passed to merits and again considered. The court has reconsidered the motion and sees no reason for reversing its order. We are familiar with the rule that we are required to dismiss an appeal where the reversal would not accomplish any result, or where an affirmance would benefit no one; that where pending on appeal an event occurs which of necessity renders any judgment that might be pronounced ineffectual for any purpose. This rule is established by the cases cited by appellee. However, upon observation we find that the facts upon which the rule was applied differ materially from those here. In none of the cases does it appear that a public board

prosecuting appeal in good faith was compelled to do the act which it had in good faith refused to do, on pain of being cited for contempt. All rules have exceptions; it is not every change in circumstances which renders a case moot so as to require a dismissal of appeal; one exception is where the question is of public interest. Southern Pacific Co. v. Interstate Commerce Comm., 219 U. S. 433, 31 S. Ct. 288, 55 L. Ed. 283. That the public has an interest in the matter is shown by the Legislature's declaration that any order of the Board granting or refusing to revoke or suspend a license may be appealed from by any citizen feeling himself aggrieved. Section 243.560(1), KRS; Dougherty v. Kentucky A. B. C. Board, 279 Ky. 262, 130 S. W. 2d 756. There was here a real and not pretended controversy; there was no effort to seek a judgment upon some matter which for any reason when rendered could not have practical legal effect upon a then existing controversy. Both parties agree (as does the court) that we cannot render advisory opinions. (In re Constitutionality of House Bill No. 222, 262, Ky. 437, 90 S. W. 2d 692, 103 A. L. R. 1085), but we may go so far as to conclude that the chancellor was in error in overruling the Board's action in refusing to renew applicant's license.

The judgment is reversed with directions to affirm the Board's order of refusal to renew or issue new license for the fiscal year 1945-46.