R. D. MORAD,

*Appellant and Petitioner, and Respondent,*

vs.

WYOMING HIGHWAY DEPARTMENT OF WYO-
MING, Wyoming Highway Patrol Driver's License
Division,

*Appellee and Defendant and Appellant.*

(No. 2424; March 15th, 1949; 203 Pac. (2d) 954.)

14

For Appellant, Petitioner and Respondent, the cause was submitted on the brief and oral argument of James A. Greenwood of Cheyenne, Wyoming.

For the Appellee, Defendant and Appellant the cause was submitted on the brief of Norman B. Gray, Attorney General, John S. Miller, Deputy Attorney General, and Marion R. Smyser, Ass't, Attorney General all of Cheyenne, Wyoming and oral argument by Mr. Smyser.

16

OPINION

RINER, Chief Justice.

This proceeding by direct appeal brings a judgment of the District Court of Natrona County here for review. Like Nos. 2417, House vs. Wyoming Highway Department, and 2420, Blackmon vs. Driver's License Division of the Wyoming Highway Department, it also involves the proper construction of certain provisions of Chapter 162, Laws of Wyoming, 1947, commonly known, and, indeed, its citation is directed in its first section to be, as the "Chauffeurs' and Drivers' License Act". R. D. Morad hereinafter usually designated by name being also the petitioner and appellant in the District Court and respondent here, questions the action of the Drivers' License Division of the Wyoming Highway Department subsequently generally mentioned as the "Department" in refusing to issue to him

a driver's license under said act. The Department is named in the record as appellee as well as defendant in said District Court but is the appellant here. Several of the questions presented and submitted in the House and Blackmon cases supra are again presented and argued in the instant case though in some respects the facts in all of these cases vary somewhat.

The facts to be considered here are substantially these: About two or three o'clock in the morning February 18, 1948 Morad was observed by two police officers of the City of Cheyenne driving a motor vehicle across the viaduct in the City of Cheyenne at a speed of about sixty-five miles per hour. These officers immediately followed and stopped him some eight blocks on the south side of the viaduct. Thereupon the officers arrested him and took him to the Police Station in said city where he was charged with unlawfully operating a motor vehicle while under the influence of intoxicating liquor, speeding, and resisting arrest. He was confined in jail for several hours, taken to a local hospital and soon thereafter returned to the Police Station. Subsequently he filed a cash bond of $100 with the officers for his appearance in the municipal court of said city that afternoon at 4:00 P.M. He was then released from custody. Upon his failure to appear in court at the time fixed this bond was forfeited by the court. No further proceedings were attempted to review the action of the municipal court as described above. Morad at this time and since the first of January, 1948 possessed no license to operate a motor car and until as stated below, had made no application to the Department to obtain one.

February 21, 1948 the Department received the "Abstract of Court Record" from the municipal court of the City of Cheyenne certifying that Morad forfeited bail on February 18, 1948 after being charged

with the offense of "operating a motor vehicle upon the public highways while under the influence of intoxicating liquor", the forfeiture being made because of Morad's "non-appearance at date set for trial".

Morad's residence at this time was in Casper, Wyoming. On March 7, 1948 he applied for a Wyoming Drivers' License. He passed the required examination given by a patrolman on behalf of the Department. Shortly thereafter he received a letter from the Department under date of March 10, 1948 wherein, after calling attention to the fact that the Department had an Abstract of Court Record of the purport already stated and that such circumstance authorized the revocation of an existing license in this state, and after stating also that Morad had applied for and passed the examination for "an Operator's License" continued as follows:

"Chapter 162, Session Laws 1947, Section 19; The Department is hereby authorized and empowered to refuse to issue a license under this Act to any person for any cause satisfactory to said Department, * * *

"Therefore, this Department refuses to issue a license for a period of one year from the date of February 18, 1948. If you do not violate the traffic laws of this State you may apply for a license on February 18, 1949."

On March 26, 1948 Morad filed in the District Court of Natrona County an appeal from this action of the Department wherein he claimed that at the time he was arrested as stated above he was not "violating any of the laws of the State of Wyoming or committing any crime or offense". Issues were made up by an answer on behalf of the Department setting forth the circumstances to a large extent as detailed hereinabove and which occurred in the City of Cheyenne on February 18, 1948. There appears to have been no reply filed.

April 22, 1948 the matter of this appeal came on to be heard before the court without a jury. After hearing the evidence which dealt largely with the difficulty in which Morad had become involved in the City of Cheyenne as recited above and whether Morad was "under the influence of intoxicating liquor" or "intoxicated" while he was driving a motor vehicle on the streets in the City of Cheyenne the morning of February 18, 1948, there was presented to the court by Morad's counsel a motion for "an order in favor of petitioner (Morad) and directing the Highway Department to issue a license in conformity with the examination which he took and passed". Counsel in connection with that motion at the time stated to the court:

"This man had been drinking but was not drunk. And in support of that Your Honor, I offer that the Wyoming statutes, the law used to be 'while driving under the influence of intoxicating liquor', and the Legislature intentionally changed the same to read 'Driving a motor vehicle while intoxicated.' "

This motion the court sustained and April 23, 1948 entered a judgment in Morad's favor wherein the court found:

"generally for the Petitioner, and that the action of the Defendant in refusing to issue a driver's license to the Petitioner was erroneous;"

and then entered a judgment:

"that the Defendant (Highway Department) forthwith issue a driver's license to the Petitioner herein,"

From this judgment the Department instituted this appeal proceeding in this court. The record was filed here July 17, 1948. The Department's brief and abstract were filed September 15, 1948 within the time fixed by the rules of this court. The time for filing the respondent's brief was, upon his application and stipu-

lation of counsel, by an order of date October 28, 1948, extended to November 30, 1948. On the 29th of that month respondent's brief was duly filed. Thereafter the cause was set for hearing and argued orally January 31, 1949.

It is apparent that the case through lapse of time has become moot in character as was the situation presented in both Nos. 2417 and 2420, the House and Blackmon cases, supra. We say this because the Department by its letter under date of March 30, 1948 advised Morad that he could "apply for a license on February 18, 1949" if he did not violate the traffic laws of this state. So far as we are advised he has not committed any such violation and he has duly been issued his driver's license. It is obvious that any judgment this court might render at present could not on account of such lapse of time have any practical legal effect on the controversy presented herein.

However, as a number of the questions submitted in the briefs and oral arguments of the parties in all three of these cases (Nos. 2417, 2420 and 2424) deal with matters of general public interest in some respects, as we think, and may arise again, we shall, nevertheless, consider and dispose of them at this time. There is also an important additional reason for passing upon these points. In the Attorney General's brief on behalf of the Department we are told without dispute that:

"In the case of State of Wyoming, Plaintiff, v. D. R. Kelso, Defendant, the Highway Department received an abstract of court record disclosing that D. R. Kelso had forfeited bail in the justice court for the offense of driving a motor vehicle while under the influence of intoxicating liquor. Upon receipt of the abstract of court record notifying the Highway Department that D. R. Kelso had forfeited bail for the offense of driving while under the influence of intoxicating liquor, the Department revoked D. R. Kelso's license for a period

of one year. D. R. Kelso appealed to the District Court of Park County to which appeal the Highway Department through the Attorney General filed a demurrer. The District Court sustained the demurrer on the ground that where a person has forfeited bail, it is mandatory that the Department act and there is no appeal provided for in those circumstances under the Chauffeurs' and Drivers' License Act."

Rulings contrary to the decision in the Park County District Court case were made in both the House and Blackmon litigation supra. For the guidance of the Highway Department and in order to produce uniformity in the decisions of the several district courts hereafter we think it proper, in the exercise of our "general superintending control" of all district courts (Constitution of Wyoming, Article 5, Section 2) we should express our views upon these questions.

In State Ex rel. Traub vs. Brown, 9 W. W. Harr. (Del.) 187, 197 Atl. 478 where the prosecution of a writ of error had been delayed, the court said:

"The section of the statute in question was applicable only during a specified period of time which had elapsed when the writ of error came on for a hearing. This being so, the question raised by the exceptions has become moot. It is well settled that Courts are not required to spend time considering controversies which injure no one and which raise nothing but abstract questions for adjudication, unless a matter of great public interest is involved, or unless some other sufficient reason appears."

So where the suspension period of a liquor license expired October 21, 1946 and the opinion of the appellate court was thereafter filed February 18, 1947 the court thought the question as involved in the case was "of sufficient public interest" to warrant the court in deciding that question. Prior to a consideration thereof the Supreme Court of Oregon said in the case of In re Suspension of License by Oregon Liquor Control Com-

mission, 180 Ore. 495, 177 Pac. 2d 406 and in explanation of its action:

"We agree that courts ordinarily do not determine moot questions. There is, however, a well recognized exception to this general rule. Where the question is one involving the public welfare, and there is a likelihood of it being raised again in the future, a court in the exercise of its discretion may decide it for the guidance of an official administrative agency. Southern Pac. Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 S. Ct. 279, 55 L. Ed. 310; McCanless, Com'r. v. Klein, 182 Tenn. 631, 188 S. W. 2d 745; Fox v. Holman, 95 Ind. App. 598, 184 N. E. 194; Payne, County Treas., v. Jones, 193 Okl. 609, 146 P. 2d 113; Brown v. Baumer, 301 Ky. 315, 191 S. W. 2d 235; Drozdowski v. Mayor and Council of Borough of Sayreville, 134 N. J. L. 566, 49 A 2d 476. The rule is thus stated in 1 C. J. S., Actions, § 17:

" ' * * * a court ordinarily will not entertain an action or proceeding merely for the purpose of passing on a moot question or abstract proposition unless * * * the determination of such question or proposition is necessary to the disposition of an actually pending controversy, or unless some question of general public interest is involved. ' "

See also Modlin vs. Board of Commissioners, 55 Ind. App. 239, 103 N. E. 506.

In the House case supra we have already considered at some length what should be regarded as a moot question.

Referring to those parts of Section 15, Chapter 162, Laws of Wyoming 1947 quoted in the opinion in cause No. 2417, the House case supra, viz. Subdivisions "(1)" and "(2)" and clause "(b)" of "(2)" which last mentioned clause reads, to repeat, "driving a motor vehicle while intoxicated or under the influence of a narcotic drug" and referring also to that part of Section 60-414 W.C.S. 1945 likewise quoted in the House case opinion which declares it to be unlawful and a mis-

demeanor for "any person who is under the influence of intoxicating liquor . . . to drive any motor vehicle in this state", it appears to be contended by counsel that the quoted language above "while intoxicated" and "under the influence of intoxicating liquor" refer to and mean two different physical conditions. We do not so read these statutory provisions when their full import is considered with relation to the context in which they are found.

Subdivision "(2)" of Section 15 of Chapter 162 W. C. S. 1947 makes it mandatory for the Department to revoke the license of any person upon receiving said evidence of the conviction i.e. "final conviction", in certain courts specified or of the entry of the plea of guilty and sentence thereupon or of the forfeiture of bail of any such person "charged with the commission of any of the following crimes . . . (b) driving a motor vehicle while intoxicated . . ." It seems apparent to us that the legislature in using the words "while intoxicated" was employing them merely as referring to the criminal statute Section 60-414 W. C. S. 1945 which at the time Chapter 162 aforesaid was enacted was the only "crime" wherein the driving of a motor car when the mental and physical reactions of the driver were affected by alcoholic liquor was involved. In other words these two expressions as used in Section 15 of Chapter 162 aforesaid and in Section 60-414 W. C. S. 1945 are to be regarded as synonymous.

Especially do we think this to be so when we find Webster's New International Dictionary (both 1935 and 1947 editions) defining the word "intoxicated" as "under the influence of an intoxicating liquor . . ."

Of similar import are many utterances of the courts, a few of which are here given.

In Ex parte Smith, Director of Public Safety, 30 Ala. Ct. of App. 24, 200 So. 114 we find this language used:

"It is the opinion of this court that said Inferior Court acted wholly without authority of law in entertaining the petition of Griggs and in ordering the restoration of his driver's license.

"The contention of respondent here, as was that of Griggs before the Inferior Court, is that the conviction in the Inferior Court was for driving a motor vehicle 'while under the influence of intoxicating liquor' whereas the provision, Section 10, subsection (h) 2, making revocation of the driving license mandatory was when a final conviction had occurred for the driving of such vehicle 'while intoxicated'; that the one offense is different from the other, the first being that denounced by Section 48, General Acts 1927, p. 365, Micie's Code 1928, Section 1397 (50), and the latter as proscribed by General Acts 1936-37, Ex. Sess., p. 229; that therefore the conviction having been had for the former and not the latter offense, the said Inferior Court, under subsection (n), Section 10, of said Drivers' License Act, was authorized to entertain the petition of Griggs, as regards the revoking of his driver's license and for the restoration thereof.

"Such a position is untenable and controverts unambiguous decisions of both appellate courts of our State. The law has already been pronounced that the charge of driving a motor vehicle 'while under the influence of intoxicating liquor' is equivalent to charging him with driving such vehicle 'while intoxicated' and that there is no substantial difference between the two."    (Citing cases)

The Supreme Court of Louisiana in the case of State vs. Dudley 159 La. 872, 106 So. 364 stated that it was of the opinion:

"that the term *under the influence of liquor* has a well-recognized meaning with every one, which is exactly synonymous with the term *in an intoxicated condition.*"    (Italics supplied by the Louisiana court).

In People vs. Dingle, 56 Cal. App. 445, 205 Pac. 705 the court said:

"It is probably true, however, that the phrase 'under the influence of intoxicating liquor' is, substantially and to all practical intents and purposes, synonymous with such words as 'intoxication' and 'drunkenness.' " See also the much later case of Taylor vs. Joyce, 4 Cal. App. 2d 612, 41 Pac. 2d 976.

So in Jones vs. Mikesh, 60 Ida. 680, 95 Pac. 2d 575 we find this language used:

" 'Intoxicated' and 'under the influence of intoxicating liquor' are understood to mean the same, in this country. See 'intoxicated', Webster's New International Dictionary, Second Edition; Packard v. O'Neil, 45 Idaho 427, 262 P. 881, 56 A. L. R. 317."

The text, 5 Am. Jur. 918, Section 774 says:

"The phrases 'under the influence of an intoxicant', and 'in an intoxicated condition', mean substantially the same thing."

The contention is made that when the Highway Department revokes a driver's license under the mandatory provisions of subdivision "(2)" of Section 15 aforesaid upon receiving "satisfactory evidence" of the final conviction in the three courts there listed or of the "entry of the plea of guilty and sentence thereupon or of the forfeiture of bail of any such person" charged with the commission of the six offenses in said subdivision "(2)" mentioned, that person may invoke the remedy provided for in subdivision "(4)" of said section, i.e., an application within thirty days thereafter "for a hearing in the matter before the district court of the county in which the applicant resides". We can not sustain this contention.

In fact we think the district court under such circumstances is without jurisdiction to entertain any such application. The remedy provided in subdivision

"(4)" of said Section 15 is definitely established for use when the Department conducts an investigation under subdivision "(3)" of said section for the suspension, cancellation or revocation of a license upon its "records or other sufficient evidence" that the licensee is or has been involved in any of the sundry transgressions in the eight subordinate clauses designated "(a)" to "(h)" inclusive and detailed in said subdivision "(3)", and findings have been made as directed in subdivision "(4)". In such event the licensee has not had his day in court and it is proper that he should have that so the remedy as provided in subdivision "(4)" has been given in order that he may obtain a review of what is but the action of an administrative department of the state government. We are confirmed in this view when we examine the case law in several jurisdictions where substantially similar provisions with those in Section 15 supra prevail.

In Law vs. Commonwealth, 171 Va. 449, 199 S. E. 516 all within the same year but in different counties, Law was convicted of reckless driving in two justice courts. The record of these two courts was forwarded to the Division of Motor Vehicles at Richmond. Upon receiving the last record the director of the Division ordered that Law's driver's license be revoked for one year and Law was notified. Thereafter he applied to the director to have the revocation order set aside. This that official declined to do considering that the statute was mandatory and that he had no discretion in the matter. Thereupon Law seeking the same relief filed his petition in the Corporation court of the City of Norfolk. That court also refused to investigate the merits of his conviction, also being of opinion that the statute was mandatory. Affirming this action of the subordinate court the Supreme Court of Appeals of Virginia said in part:

"Petitioner's first assignment of error reads:

" 'First: The Director of Motor Vehicles not only acted arbitrarily and revoked petitioner's license to operate a motor vehicle without a hearing, but after due application for a hearing on the part of your petitioner, refused to grant him a hearing, in contravention of the provision of section 2154 (187), which provides as follows:

" ' "The division may after due hearing, upon not less than five days' notice in writing * * * suspend or revoke the operator's * * * license * * * whenever it is satisfactorily proved to the division:

" ' "First. That such person has committed any offenses for the conviction of which mandatory revocation of license is provided in section 2154 (186)." '

\* \* \* \*

"The statute relied upon by the petitioner and which gives him the right to be heard in certain circumstances contains these provisions:

" 'Division may suspend or revoke licenses.—(a) The division may after due hearing, upon not less than five days' notice in writing, said notice to be sent by registered letter to the address given by the operator or chauffeur when applying for his license, which shall constitute sufficient form of notice, suspend or revoke the operator's or chauffeur's license issued to any person under the provisions of this act whenever it is satisfactorily proved to the division:

" 'First. That such person has committed any offenses for the conviction of which mandatory revocation of license is provided in section 2154 (186).'

"There is no conflict between these statutes. In the first, convictions are necessary before the mandatory directions to the Director of the Division of Motor Vehicles comes into effect; in the second although there has been no conviction, this Director is given power to revoke a license when he is satisfied by proper evidence that the licensee had been guilty of those offenses specified in subsection 186. It is only in such a case

that he must hear evidence. He is given no power to disregard judgments of courts of competent jurisdiction.

\* \* \* \*

"The director could not be expected to hear evidence when there was nothing for him to decide.

"It is equally manifest that the Corporation Court of the city of Norfolk could not in this proceeding pass upon the judgments of the trial justices. From those judgments, Law had the right of appeal. This right he did not see fit to exercise, and so they have become final. Upon the merits of his case a defendant is entitled to one fair trial and to no more. Vaughn v. Mayo Milling Co., 127 Va. 148, 102 S. E. 597."

The Criminal Court of Appeals of Oklahoma in Ashcraft vs. State, 68 Okla. Cr. 308, 98 Pac. 2d 60 had occasion to consider the appeal of defendant Ashcraft where having been charged in the district court with the crime of operating a motor vehicle while under the influence of intoxicating liquor, he was tried, convicted, and sentenced. He sought reversal of this judgment. After an examination of the driver's license statutes of the State of Oklahoma the court affirmed the judgment below and announced its conclusions in the following language:

"First, that after final conviction of a party in a court of record, the court has the power, and it is its duty to require the defendant to surrender to it all operator's or chauffeur's licenses held by such person so convicted.

"Second, upon receipt of the license by the court the same shall be forwarded to the Commissioner of Public Safety.

"Third, this report should contain: (a) the name of the offenders (b) the number of the operator's or chauffeur's license; (c) the penalty imposed; and (d) a statement that the judgment and sentence has become final. If an appeal is taken to the Criminal Court of Appeals, in the manner provided by law, the convic-

tion does not become final until the judgment has been affirmed, and a mandate returned to the trial court.

"Fourth, if the conviction be for an offense mentioned in Section 25, Chapter 50, Session Laws 1937, 47 Okl. St. Ann. § 295, it then becomes the mandatory duty of the Commissioner upon receipt of the record, which shows that the conviction has become final, to revoke the license, and refuse to grant a further license for a period not to exceed one year from the date on which the conviction has become final. There is no appeal from the order of the Commissioner in cases that are men-tioned in Section 295, infra.

"Fifth, if the conviction be for an offense under the Motor Vehicle Act, other than that mentioned in Sec-tion 295, the Commissioner may, in his discretion, suspend or revoke the license, such suspension or re-vocation being in addition to the punishment imposed by the court.

"Sixth, this suspension may be for a period not in excess of one year, and is subject to an appeal to the County Court and from there to the District Court, in the manner provided by law. The judgment of the District Court is final. This revocation or suspension of the license should not be made until the judgment has become final, as expressed in Section 294 (c), 47 Okl. St. Ann.

"Seventh, under the Act, the Commissioner of Public Safety is the one who has the authority to cancel, suspend, or revoke the license, and this can not be done by the court."

In the case of Kempter's Appeal, 29 Pa. Dist. and Cty. 584 it appeared that appellant had pleaded guilty to the offense of failure to stop and render assistance at the scene of an accident in which his car was in-volved. The Department of Revenue of Pennsylvania upon receiving notice of appellant's conviction revoked his operator's license for the term of one year. He appealed from this departmental action. For the Com-monwealth it was contended that no appeal should be

allowed where the Department had grounded its revocation upon a court conviction. Dismissing this appeal the court said:

"Under the provisions of the Vehicle Code of May 1, 1929, supra, section 614, as now amended by the Act of June 11, 1935, P. L. 331, sec. 1, it is provided that upon receiving a certified record from the clerk of the court of proceedings in which a person pleaded guilty of any of the crimes enumerated in said section, which included an operator of a motor vehicle involved in an accident resulting in injury to or death of any person, or damage to property, upon the charge of failure to stop and render assistance, the secretary shall forthwith revoke for a period of one year from the date of revocation the operating privilege of such person so pleading guilty."

\* \* \* \*

"There is a right of appeal to the court from the suspension of an operator's license under section 615, but there is no provision in the Act for an appeal from the action of the department for revocation of a license under the section of the act under which the department was proceeding at that time. This contention of the department was upheld by the court, and the appeal must be dismissed at the costs of appellant."

We may comment that Section 614 of the Pennsylvania statute resembles subdivision "(2)" of section 15, Chapter 162 supra and Section 615 of the Pennsylvania Act is analogous to subdivision "(4)" of said Section 15.

See also Emmertson vs. State Tax Commission, 93 Utah 219, 72 Pac. 2d 467; Prichard vs. Battle, Director etc. 178 Va. 455, 17 S. E. 2d 393; Commonwealth vs. Ellett 174 Va. 403, 4 S. E. 2d 762; Folsom vs. S. Car. State Highway Dept. 196 S. Car. 167, 13 S. E. 2d 130.

If there could be any doubt that our construction of these provisions of said Section 15 and subdivisions "(1), (2), (3), and (4)" thereof should be regarded

as incorrect, the argument of the Attorney General submitted in his brief would seem to be very persua- sive otherwise. That official points out that if a person was convicted in a justice court for the offense of driv- ing a motor vehicle while under the influence of intox- icating liquor, thereafter appealing that conviction to the district court and obtaining an adverse decision there, he also appealed to this court where the ruling was likewise adverse, the decisions of both inferior courts being affirmed, then the conviction being upon such a result a final one and a certified copy of the judgment of this court being transmitted to the High- way Department, under the law, it would be incumbent upon that department to thereupon revoke the appel- lant's driver's license. If the contention that an appeal would lie from this departmental action to "the district court of the county in which the applicant resides" to review the propriety of such action by a re-examination of the entire matter, was upheld, then the anomalous situation would be presented of that district court reviewing not only the decision of another coordinate district court but also the action of this court as well. It is manifest such a result was never contemplated by the framers of our state constitution which provides that this court "shall have a general superintending control over all inferior courts" (Constitution of Wyo- ming, Article 5, Section 2).

Before concluding this discussion we may indicate also that the remedy of appeal to the district court as provided in subdivision "(4)" of said Section 15 is available also for use by a party aggrieved through the action of the Department under Section 19 of Chapter 162 supra which provides:

"The Department is hereby authorized and empowered to refuse to issue a license under this Act to any person for any cause satisfactory to said Department but the applicant for said license in such case shall have a

right of action in the same manner as is provided for in Section 16 of this Act."

In such case also the person refused a license has not had his day in court. Subdivision "(4)" says that "any person denied a license" shall have the right to apply to the district court of his residence to have determined the question "whether the applicant is entitled to a license . . ."

It is true Section 19 appears to refer also to Section 16 of said Chapter 162 as affording a remedy appropriate for use in connection with Section 19 of the act but inasmuch as that section provides no "right of action", obviously Section 15 was intended by the framers of the law.

The district court was accordingly correct in entertaining Morad's application in the matter at bar. Under the circumstances presented we express no opinion, however, as to the correctness of the judgment entered by that court.

The appeal of the Department will be dismissed as involving a case moot in character.

*Appeal Dismissed.*

KIMBALL, J. and BLUME, J. concur.