The MEDICAL VISION GROUP, P.S.C., and Schatzie, L.L.C., Appellants,

v.

Hon. Timothy N. PHILPOT, Judge Fayette Circuit Court and Charlene Theresa Dudee, Jitander Singh Dudee, and James W. Gardner, In his Capacity as Receiver (Real Parties in Interest), Appellees.

No. 2008–SC–000017–MR.

Supreme Court of Kentucky.

Aug. 21, 2008.

Trevor Wayne Wells, Miller & Wells, PLLC, Lexington, KY, Counsel for Appellants.

Judge Timothy Neil Philpot, Fayette Circuit Court, Lexington, KY, pro se.

Suzanne Marie Baumgardner, Valerie S. Kershaw, Dawahare & Kershaw, LLP, Lexington, KY, Counsel for Appellee, Charlene Theresa Dudee, Real Party in Interest.

James Roscoe Stinetorf, Thomas Dulaney Bullock, Harold Lewis Kirtley, Bullock & Coffman, LLP, Lexington, KY, Counsel

for Appellee, Jitander Singh Dudee, Real Party in Interest.

James Wilson Gardner, Henry Watz Gardner & Sellars, PSC, Lexington, KY, pro se.

Opinion of the Court by Justice ABRAMSON.

The Medical Vision Group, P.S.C. (MVG), and Schatzie, L.L.C. (Schatzie), petitioned the Kentucky Court of Appeals for a writ prohibiting Judge Timothy Philpot of the Fayette Circuit Court from appointing a receiver to oversee both business entities and from asserting external judicial control over the businesses' accounts and assets. The Court of Appeals denied the writ, finding that because the businesses are alter-ego corporations of Dr. Jitander Dudee, the trial court had jurisdiction over MVG's business assets and could direct that they be used to pay Dr. Dudee's personal marital debts. MVG and Schatzie now appeal to this Court as a matter of right. KY Const. § 110(2)(a); CR 76.36(7)(a). Because the trial court recently dismissed the receiver in this case, the issue before this Court is now moot and this appeal is thereby dismissed for lack of jurisdiction.

### RELEVANT FACTS

The underlying case in this appeal is a dissolution proceeding between Dr. Jitander Dudee and Ms. Charlene Dudee. Dr. and Ms. Dudee were married on January 11, 1995, and had four children together. At the time of the dissolution, the couple had a nine-year-old, a seven-year-old, and three-year-old twins. During their marriage, Dr. Dudee maintained a successful solo ophthalmology practice and owned several real-estate properties while Ms.

Dudee was the main caretaker of their home and their four children. Dr. Dudee incorporated his ophthalmology practice as The Medical Vision Group, P.S.C., (MVG), and created Schatzie, LLC., to be a real estate holding company.[1] The couple's net marital estate at the time of the divorce proceeding was valued at $2,766,076.

On February 13, 2006, the Fayette Circuit Court entered its dissolution decree dissolving the marriage between Dr. and Ms. Dudee. In making its findings of fact, the trial court determined that the business' entities of both MVG and Schatzie were marital property and that their net worth should be included in the Dudee marital estate. Subsequently, the trial court awarded to Dr. Dudee, among other things, MVG, which was valued at $1,006,000, and Schatzie, which was valued at $810,295.50. The trial court ordered Dr. Dudee to pay $3,600 per month to Ms. Dudee in child support and to pay a lump sum of $1,299,038 to Ms. Dudee to equalize the division of property between the parties. Several weeks later, on March 28, 2006, the trial court entered an order also directing Dr. Dudee to pay $5,600 per month to Ms. Dudee for maintenance until the lump sum property judgment was paid or until the twins began kindergarten, whichever occurred first.

In the year following the dissolution decree, Dr. Dudee failed to pay Ms. Dudee any part of the outstanding property judgment and eventually, in late February 2007, he stopped paying Ms. Dudee's monthly maintenance payments. As a consequence, the trial court held several hearings to determine whether Dr. Dudee should be held in contempt of court. At a February 19, 2007 contempt hearing, Dr.

---

1. Dr. Dudee is the sole owner of MVG. Dr. and Ms. Dudee are the only shareholders of Schatzie.

Dudee told the trial court that he did not have the resources to pay Ms. Dudee her property judgment and stated that if the court doubted his financial hardship, it should appoint a receiver to audit his businesses. The trial court considered this motion but did not rule on a receiver at that time. Almost a month later, on March 12, 2007, the trial court concluded that Dr. Dudee had the ability and resources to pay Ms. Dudee and that he was in contempt of court for failing to comply with its orders. In its contempt order, the trial court directed Dr. Dudee to pay Ms. Dudee $15,000 every month toward the outstanding judgment, sentenced Dr. Dudee to serve ninety days in the Fayette County Detention Center, and permitted Dr. Dudee to participate in work and time-sharing release.

Following the trial court's finding of contempt, on March 21, 2007, Ms. Dudee filed a motion with the Fayette Circuit Court requesting it to appoint a receiver to operate MVG and Schatzie. Ms. Dudee stated as grounds for her motion Dr. Dudee's recent abandonment of his businesses, his refusal to participate in the detention center's work release program, his remand to the Fayette County Jail for being in contempt of court, and his continued failure to tender the property judgment payments as previously ordered by the trial court. On March 23, 2007, the trial court held a hearing to consider Ms. Dudee's motion for a receiver. Although Dr. Dudee stated that he did not believe the trial court had jurisdiction to appoint a receiver over his separate business entities, he nonetheless reiterated that he wanted the court to appoint a receiver and would agree to all aspects of the receivership. Thereafter,

on April 2, 2007, the trial court appointed James Gardner as the receiver for MVG and Schatzie and ordered the parties to immediately meet with Mr. Gardner in order to determine the parameters of the receivership.[2] Although Dr. and Ms. Dudee originally met and agreed upon the receiver's role, when it came time to sign the agreed order outlining the receivership, Dr. Dudee refused to sign the agreement. This led to Ms. Dudee's May 29, 2007 motion requesting the trial court to define the duties of the receiver for the parties. On June 4, 2007, the trial court responded to Ms. Dudee's motion by authorizing the receiver, Mr. Gardner, to conduct investigations into the business and accounting practices of both MVG and Schatzie and to pay Ms. Dudee child support, maintenance, and judgment amounts as had been previously ordered by the court.

On June 21, 2007, Ms. Dudee filed another motion with the court asking it to compel Dr. Dudee to make immediate payments, or to permit the receiver to initiate payments of maintenance, day care costs, the receiver's compensation, and her previously awarded attorney's fees. The trial court granted Ms. Dudee's motion and on June 29, 2007, gave Mr. Gardner the authority to take over the business operations of MVG and Schatzie, and from the accounts or assets of those businesses, pay himself, the day care facility, the past-due maintenance amount, and Ms. Dudee's attorneys fees. Following this order, on July 10, 2007, Dr. Dudee filed an emergency motion asking that the court also allow the receiver to pay the necessary and ordinary expenses of MVG, including but not limited to the business's utilities and staff wages.[3]

---

2. In this order, the trial court explained its decision to appoint a receiver by noting that Ms. Dudee had "filed a Motion for Appointment of a Receiver," and that Dr. Dudee had

"made a similar oral motion before the Court."

3. MVG also responded individually to the trial court's June 29th Order. On July 12, 2007,

On July 19, 2007, after having considered Dr. Dudee's emergency motion, the trial court entered an order directing Mr. Gardner to pay the following items from MVG's accounts in the following order of priority: 1) child support in the amount of $3,600 per month to Ms. Dudee; 2) maintenance in the amount of $5,600 per month to Ms. Dudee; and 3) necessary and reasonable expenses of MVG as determined in the receiver's discretion. Due to this action by the trial court, on August 30, 2007, MVG and Schatzie filed a writ of prohibition with the Court of Appeals seeking to prevent Judge Philpot from further imposition of the receivership or any type of external control based on the marital dissolution action between Dr. Dudee and Ms. Dudee.[4] MVG and Schatzie argued that because they were corporate entities legally separate and distinct from Dr. Dudee, the trial court had no jurisdiction to interfere with their business assets and no authority to "pierce the corporate veil" to satisfy Dr. Dudee's personal debts. In response to this writ, Ms. Dudee argued to the Court of Appeals that the trial court did have jurisdiction over MVG's assets because of Dr. Dudee's consent to the

receivership and because, in the alternative, these businesses were Dr. Dudee's alter-ego. On December 3, 2007, the Court of Appeals agreed with Ms. Dudee and found that Judge Philpot had jurisdiction over the corporate assets because MVG and Schatzie were the alter-egos of Dr. Dudee. After the Court of Appeals denied the petition, MVG and Schatzie filed their notice of appeal to this Court on December 26, 2007.

Following the filing of this appeal, the trial court continued to hold hearings in order to monitor and review the receiver's role, the most recent of which occurred on March 1, 2008. During this hearing, Dr. Dudee revealed to the trial court that he was taking psychiatric medical leave and was either going to wind-down his medical practice or hold it in abeyance. A few days later, on March 4, 2008, Dr. Dudee informed the trial court that he would be leaving his practice for at least eight weeks and did not know if he would return. Due to this change in circumstance, the trial court entered an order on March 5, 2008, discharging the receiver and relieving him of all responsibilities with respect to MVG and Schatzie.[5] Thus, at the

counsel for MVG filed a Notice of Entry of Special and Limited Appearance with the Fayette Circuit Court, bringing to the court's attention their intention to represent MVG as a legal entity separate and distinct from Dr. Dudee.

4. In addition to the writ filed on August 30, 2007, MVG and Schatzie also filed a motion for intermediate/emergency relief with the Court of Appeals requesting the same relief. On September 6, 2007, the Court of Appeals denied this motion, relying on the fact that MVG had not demonstrated that immediate and irreparable injury would occur prior to a hearing on the underlying, original writ action. Subsequently, Mr. Gardner filed with the trial court his third receiver report on September 17, 2007, recommending that the court consider closing Dr. Dudee's ophthalmology practice and selling the real

estate owned by Schatzie. In response to this report, MVG filed a renewed motion for intermediate relief with the Court of Appeals, arguing that irreparable injury was now imminent due to the potential sale of its business. However, on September 25, 2007, the Court of Appeals found that the receiver's report did not constitute immediate and irreparable injury to MVG and denied MVG's renewed motion for emergency relief.

5. MVG and Schatzie point out in their brief that the trial court entered two orders on March 5, 2008. In its first order, the trial court directed that it would neither dismiss the receiver nor require him to remain in the case. Rather, the court ordered the receiver to provide notice if he intended to withdraw. In that same order, the trial court stated that if the receiver chose to remain in the case, he would be required to make certain child sup-

present time, the receivership of MVG and Schatzie has ceased and Dr. Dudee is again in sole control of both business entities.

Ms. Dudee argues in her brief that the issue of the appointment of the receiver has been rendered moot by the trial court's subsequent discharge of Mr. Gardner. In their reply brief, however, MVG and Schatzie contend that despite the receiver's dismissal, this Court can still grant meaningful relief because of their interest in setting aside the Court of Appeals's finding of fact that they are Dr. Dudee's alter-ego. MVG and Schatzie maintain that this finding has the potential to produce negative consequences "if third parties are able to make offensive use of that finding through the doctrine of collateral estoppel or otherwise." Furthermore, MVG and Schatzie note that since their petition did not seek relief from a particular order, but rather sought to prevent any further imposition of a receivership, the trial court's recent dismissal of the receiver does not hinder this Court's authority to decide the broader issue of whether the trial court can properly impose external control over their assets to satisfy Dr. Dudee's marital debts. We agree with Ms. Dudee that any issue relating to the appointment of a receiver has been rendered moot by the trial court's subsequent discharge of the receiver in this case.

## ANALYSIS

**I. Although MVG's and Schatzie's Claim In This Case Is Moot, The Trial Court Could Join MVG and Schatzie As Parties To This Case In Order To Enforce Its Dissolution Decree.**

The Court of Appeals denied MVG's and Schatzie's writ of prohibition in a four-sentence order, finding that since the "petitioners fall under the 'alter ego' rule," the trial court had jurisdiction over the corporations and could appoint a receiver to manage them. We initially note that even in writ cases originating in the Court of Appeals, an appellate court is prohibited from infringing on the fact-finding role of the trial court. *Commonwealth v. Deloney,* 20 S.W.3d 471, 473–474 (Ky. 2000). Here, the trial court made no mention of the alter-ego theory in its detailed, forty-page findings of fact and conclusions of law. Although there is some evidence in the trial court's findings demonstrating that Dr. Dudee frequently paid personal expenses through his corporate accounts, the trial court relied on this evidence neither to justify its authority over the corporations nor to support an alter-ego theory.[6] Rather, the trial court referenced the testimony involving Dr. Dudee's co-mingling of his corporate assets only in the context of assigning a monetary value to MVG and Schatzie as part of the marital estate.[7]

port and property division payments to Ms. Dudee, to distribute salaries to the remaining MVG staff, and to provide health insurance to the current MVG employees. In its second order, however, the trial court stated that since the receiver had "informed the Court of his request to withdraw," he was "discharged and relieved of all responsibilities with respect to Medical Vision Group, PSC and Schatzie, LLC except as otherwise contained in this Order."

**6.** The record in this case indicates that because both parties originally consented to the

receiver, the trial court was not concerned with articulating a separate jurisdictional basis for its authority to appoint a receiver.

**7.** After classifying MVG and Schatzie as marital property, the trial court heard expert testimony regarding each company's monetary value. Both Dr. Dudee's and Ms. Dudee's experts testified that because personal expenses were often paid through the business entities, it was difficult to accurately determine their value. Even though the trial court only used this evidence in calculating the worth of MVG and Schatzie and the total

Thus, the Court of Appeals engaged in improper fact-finding when it determined that MVG and Schatzie were Dr. Dudee's alter-ego.

■ Turning to the issue of mootness, an appellate court is required to dismiss an appeal when a change in circumstance renders that court unable to grant meaningful relief to either party. *Brown v. Baumer*, 301 Ky. 315, 321, 191 S.W.2d 235, 238 (Ky.1945). Unless there is "an actual case or controversy," this Court has no jurisdiction to hear an issue and is prohibited from producing mere advisory opinions. *Commonwealth v. Hughes*, 873 S.W.2d 828, 829 (Ky.1994); Ky. Const. § 110. In this case, because the trial court has discharged Mr. Gardner as the receiver of MVG and Schatzie, Dr. Dudee is now in sole control of MVG. With Dr. Dudee again in control of MVG, this Court would not be able to grant meaningful relief to either party in deciding whether the trial court did or did not have jurisdiction to appoint a receiver. Granting the writ would be futile because the receiver no longer exists and the trial court is not imposing any judicial control over Dr. Dudee's business entities. Similarly, denying the writ would be meaningless because again, the trial court has already discharged the receiver. Therefore, the question of whether the trial court had jurisdiction to appoint a receiver to oversee MVG and Schatzie is moot and this Court does not have jurisdiction to consider it.[8]

■ Despite this finding of mootness, we note that there is most likely a continu-

ing question in this case as to whether the trial court can exercise control over Dr. Dudee's business entities in order to effectuate the dissolution decree. Because this issue could arise again in this case, we briefly acknowledge the authority provided to trial courts in divorce proceedings by KRS 403.150(6). As this Court recognized in *Lewis LP Gas, Inc. v. Lambert*, 113 S.W.3d 171, 173, n. 1 (Ky.2003), *overruled on other grounds by Hoskins v. Maricle*, 150 S.W.3d 1 (Ky.2004), KRS 403.150(6) states that in a dissolution proceeding, the trial court "may join additional parties proper for the exercise of its authority to implement this chapter." Given the facts and circumstances of this case, it would be proper for the trial court to join MVG and Schatzie under KRS 403.150(6) so that it could ensure that Ms. Dudee receives the property judgment to which she is entitled.

Two factual elements present in this case entitle the trial court to invoke KRS 403.150(6) and join MVG and Schatzie as additional parties. The first element is Dr. Dudee's continued failure to abide by the trial court's orders requiring him to pay Ms. Dudee child support, maintenance, and the $1,299,038 property settlement. As noted, since the entry of the dissolution decree in February 2006, Dr. Dudee has refused to pay any amount of the property settlement to Ms. Dudee. Furthermore, Dr. Dudee stopped paying his monthly maintenance requirements in February 2007, even though the trial court ultimately held that he had the resources and the ability to make these payments. The second element is the fact that MVG is solely-

---

value of the marital estate, the Court of Appeals used this evidence to base its finding of alter-ego.

**8.** MVG and Schatzie contend that this Court could still grant meaningful relief from the Court of Appeals' factual finding that they are Dr. Dudee's alter-ego. However, they cite to

no authority supporting their contention that third-party creditors could make collateral use of the Court of Appeals' finding. Furthermore, since we have found that the Court of Appeals improperly made this finding of fact, it has no continuing viability.

owned by Dr. Dudee, and Schatzie is owned jointly by Dr. Dudee and Ms. Dudee. This is not a case where innocent third-party shareholders would be harmed if their corporation were joined as a party to a divorce proceeding. The only owners of the corporations are already parties to the dissolution action and, moreover, both Dr. Dudee and Ms. Dudee consented to the trial court's original appointment of the receiver. It was not until the trial court ordered the receiver to prioritize payments to Ms. Dudee over the regular business expenses that MVG challenged the court's jurisdiction. Although joining corporations under KRS 403.150(6) will not be appropriate in every divorce proceeding where spouses own corporate assets, because of the facts of this case, joining MVG and Schatzie as additional parties is a proper way, and perhaps the best way, for the trial court to enforce its dissolution decree.

## CONCLUSION

Since the filing of this appeal, the trial court has dismissed the receiver appointed to oversee MVG and Schatzie. Because MVG is now under the sole control of Dr. Dudee and because no receiver exists with regard to either corporation, the issue of whether the trial court had jurisdiction to appoint a receiver is moot. Even though this appeal is being dismissed as moot, we acknowledge that in the future, in cases where one party is consistently noncompliant and the business entities are wholly-owned by the spouses, trial courts could utilize KRS 403.150(6) to join these business entities as additional parties in order to enforce the provisions of the dissolution decree. For the foregoing reasons, this action is dismissed as moot.

MINTON, C.J., CUNNINGHAM, NOBLE, SCHRODER, and SCOTT, JJ., concur. VENTERS, J., not sitting.